THE PEOPLE OF THE STATE OF CALIFORNIA *ex rel.*
THE CENTRAL PACIFIC RAILROAD COMPANY
OF CALIFORNIA *v.* THE BOARD OF SUPERVI-
SORS OF THE CITY AND COUNTY OF SAN FRAN-
CISCO, AND WILHELM LOEWY, CLERK OF THE CITY
AND COUNTY OF SAN FRANCISCO.

MANDAMUS.—The rules of the Civil Practice Act are applicable to pleadings and pro-
ceedings in mandamus.

ANSWERS TO PETITION FOR MANDAMUS AGAINST A BOARD OF SUPERVISORS.—In a pro-
ceeding against a Board of Supervisors, in its corporate capacity, to procure a writ
of mandate, the answer of one or more than one of the Supervisors in his or their
own name or names, whether as Supervisor or otherwise, cannot be regarded as
the answer of the Board, and, on motion, will be stricken from the files of the
Court.

SAME.—In such case the answer should be in form the answer of the Board in its
aggregate capacity.

SAME.—In such case, if an answer is filed in due form as the answer of the Board,
the presumption is that it is the answer of the Board; and the fact that it was
sworn to by one member of the Board does not make it his answer, nor is it neces-
sary that such answer should aver that the Board by resolution adopted it.

SAME.—In such case, if two answers are filed, each in form the answer of the
Board, the Court may ascertain which is the return of the majority.

MOTION FOR JUDGMENT ON PLEADINGS IN MANDAMUS.—In proceedings to procure a
writ of mandate, a motion of the relator for judgment on the pleadings is equiva-
lent to a demurrer to the answer, on the ground that it does not state facts suffi-
cient to constitute a defense to the action. Objections to the answer which ar
required to be taken by special demurrer, or by motion to strike out, will be disre-
garded on such motion.

DENIALS IN ANSWER OF ALLEGATIONS OF COMPLAINT.—If the complaint contains
averments of the rendition of a judgment against the defendant by a Court of
competent jurisdiction, and states the character of the judgment, an answer deny-
ing that the defendant became or was lawfully bound by the judgment, is only a
denial of a conclusion of law, and does not raise an issue of fact. If the judgment
can be attacked collaterally, the answer must specify the points of its invalidity.

SAME.—If a complaint avers the passage of an ordinance by a municipal corpora-
tion, and the answer in reply states in general terms that the ordinance is illegal
and void, no issue of fact is raised.

MATTERS *res judicata.*—If a judgment has been rendered by a Court of competent
jurisdiction, and a certain matter was necessary to be averred in the complaint
and found to be true by the Court, to authorize the rendition of the judgment, the
truth of this matter becomes *res judicata,* and not subject to be again litigated
between the same parties.

RIGHT TO SHOW THAT AN ELECTION WAS INFLUENCED BY BRIBERY.—If a majority of
the electors of a municipal corporation vote in favor of a proposition for the cor-
poration to subscribe to the capital stock of a railroad company, under a law
directing such subscription to be made if such majority vote is obtained, the
municipal authorities, on proceedings to compel them to make such subscription,

have a right to allege and show that the election was not fairly conducted, but was influenced by bribery and corruption practised and perpetrated by the railroad company and its employés.

CONTRACT PROCURED BY FRAUDULENT MISREPRESENTATIONS. — An answer seeking to avoid a contract sued on by reason of fraudulent misrepresentations of the plaintiff in procuring it, must state in what the misrepresentations consisted, and they must be of matters of fact of which defendant was ignorant, and not of law.

PUBLICATION OF AN ORDINANCE.—The publication of an ordinance alone is sufficient to give it validity without a publication of the law authorizing it. All persons are charged with notice of a law on which the ordinance is founded.

CONTRACT BETWEEN CORPORATIONS.—A proposition made by some corporate act of a railroad corporation to the authorities of a municipal corporation, and an acceptance of the terms thereof by an ordinance of the municipal corporation, constitutes a contract between them.

HOW MUNICIPAL CORPORATION MAY CONTRACT. — A municipal corporation may contract by ordinance, and an ordinance accepting of the terms of a proposition made to the municipality amounts to an assent to the contract on the part of the corporation, and not a mere declaration of intention to enter into a contract.

AID TO A RAILROAD BY A MUNICIPAL CORPORATION.—If a municipal corporation has become bound by a vote of its electors, taken under a law of the Legislature, to subscribe to the stock of a railroad company, and pay the amount of its subscription in its bonds, and then makes a compromise with the railroad company by which it agrees to deliver the company a less amount of its bonds in consideration of being released from its subscription, the delivery of this less amount of bonds is not a donation to the railroad company, nor is the fact that the railroad does not touch the city and is not one of local interest, a defense in an action to compel the issuance of the bonds under the compromise.

COMPROMISE OF CLAIM AGAINST A CORPORATION.—A municipal corporation, if authorized to do so by law, may compromise a valid claim against it, and the valid claim is a consideration which will support the compromise.

COUNTERSIGNING BONDS OF SAN FRANCISCO TO CENTRAL PACIFIC RAILROAD COMPANY.—The Clerk of the City and County of San Francisco is not in default for not countersigning the bonds required to be issued by the Act of 1863, authorizing said city to subscribe to the capital stock of the Central Pacific Railroad of California, until the Board of Supervisors direct him to countersign the same or afford him an opportunity to do so in their presence, and he refuses.

APPLICATION FOR MANDAMUS A CIVIL ACTION. — A proceeding to procure a writ of mandate is a civil action, and the general rules of the Civil Practice Act are applicable to it.

JUDGMENT IN MANDAMUS.—If the relator, in proceedings to procure a writ of mandate, proceeds by petition and notice for a peremptory writ without procuring an alternative writ, the Court may grant any relief consistent with the case made by the petition and embraced within the issues, although it may be only part of that asked in the prayer of the petition.

THE Board of Supervisors of the City and County of San Francisco consisted of twelve members. The Board held a meeting, and by a majority vote passed the following resolution:

"*Resolved*, That the City and County Attorney be, and he hereby is requested to *represent* the Board of Supervisors and the members thereof in the proceedings lately instituted against said Board and Wm. Loewy, by the People of the State of California, upon the relation of the Central Pacific Railway of California, and other litigation upon the same subject, with a view to an early and definite determination of all the questions involved. And that G. W. Bell, F. N. Torry and Henry L. King be and are hereby appointed a committee of this Board to confer with the City and County Attorney, with power, if they upon such conference think it best for the public interest, to employ assistant counsel; the compensation of such counsel to be hereafter fixed and determined by the Board."

In *French* v. *Teschemaker et als.*, 24 Cal. 518, and *The People* v. *Coon et als.*, 25 Cal. 635, will be found a full statement of any facts not contained in the opinion of the Court.

*E. B. Crocker*, for Relator.

The first question we propose to examine is that relating to the return made by the Supervisors, under the motion to strike out the answers of six of the Supervisors. Although no alternative writ of mandamus has been issued, yet the affidavit and notice under the statute occupies substantially the same position, and the affidavits in answer to the petition are properly subject to the same rules as a return to the alternative writ. The application differs materially from an ordinary action, as the *Supervisors* are the parties, and not the City and County of San Francisco, the corporation they represent. As Supervisors they are liable individually in this proceeding for *damages and costs*, (Practice Act, §472,) which *they* must pay, and not the corporation they represent. The corporation of San Francisco has not refused to do the act required, but the Supervisors as individuals have, and are therefore liable.

The proceeding is against an aggregate body, and the proper way for them to make a return is to meet together, and resolve

by a majority vote what return shall be made. (Tapping, Mandamus, 384, 386,) [341].

In the absence of any return thus resolved upon, it is well settled that individual members dissenting from the return made, may file their separate returns, which will have force and effect according to the number thus dissenting. (Tapping, Mandamus, 384, 385, 386,) [341 to 344].

Apply these well settled rules to the present case. A paper purporting to be a return of the Board is drawn up, but never acted upon by them at any official or other meeting. It is sworn to by but one Supervisor, and thus it is virtually the return of but that one. Six of the Supervisors find that return to be false, and as they are liable to be mulcted in heavy damages and costs, file their returns, setting up the facts as they really are, as they have a perfect right to do, to protect themselves from personal liability.

Thus it follows that here are the returns of six members which admit the rights of the plaintiff, to one which deny them. If, however, the return made by McCoppin is to be treated as the return of himself and the other five members, who make no return, then it stands six affirming and six denying, and thus there is no issue raised. The allegations of the petition would stand undenied, and the plaintiff would be entitled to judgment. The Mayor might perhaps step in, and by siding with one or the other create a preponderance, but he has not done so.

*It will be noticed that not a single allegation of fact in the petition is specially denied* as required by section forty-six of the Practice Act. Every material allegation not "specifically controverted," is to be taken as true. (*Blankman* v. *Vallejo*, 15 Cal. 644; *Busenius* v. *Coffee*, 14 Cal. 93; *Anderson* v. *Parker*, 6 Cal. 200; *Swartz* v. *Hazlett*, 8 Cal. 126; *Dewey* v. *Bowman*, 8 Cal. 149.)

The only inquiry then is, does McCoppin's return *set up any new matter which shows that notwithstanding the truth of the facts stated in the petition*, the relator is not entitled to the writ?

The first allegation, or rather series of allegations, are those charging fraud and corruption in bribing voters at the election in May, 1863.

These averments of alleged bribery should be disregarded for the reason *that the election cannot be attacked in this collateral proceeding.* The law regulating elections provides how the same shall be contested. Wood's Digest, page 380, section forty-six, requires the filing of a statement within forty days after the return day of the election. No such action having been taken in this case, the validity of that election cannot be contested in this proceeding. (*Satterlee* v. *San Francisco,* 23 Cal. 320, and the cases there cited.)

So, also, the validity of this election is *res judicata.* In the case of *French* v. *Teschemaker et al.,* in which the Board of Supervisors and the relator were parties, the validity of this election was one of the issues tried and adjudicated. The District Court found that the election was valid, and their judgment was affirmed by this Court, on appeal.

So, also, in the first mandamus brought by the relator against the Board of Supervisors to compel them to make the subscription and issue the bonds for six hundred thousand dollars, the Supervisors had an opportunity to raise the question of the validity of that election, but did not see proper to do so. The judgment in that proceeding is conclusive not only of the issues actually tried, but also of all questions which might have been put in issue, or which would have constituted a proper ground of defense. (2 Phillips' Ev., C. H. and E.'s Notes, 29, 30; 1 Blackford, 360.)

The next reason given is that the compromise was obtained by fraudulent representations, and is therefore void and should not be enforced.

The alleged false representations are, that the officers of the company stated to the Board and the Mayor, immediately previous to the passage of the ordinance, that *if the proposed compromise was not made, the whole subscription of six hundred thousand dollars, with at least a year's back interest thereon,*

*would be immediately due and owing to the company from San Francisco.*

It then avers that this representation was false, *because the Company had not at the time and have not up to this date called in or collected from individual subscribers the whole amount, or any large portion of their subscriptions to the capital stock.*

But all these averments are *uncertain* and *evasive,* as well as too *general.* The facts and circumstances are not stated, as they must be in cases where fraud is charged. (*Kinder* v. *Macy,* 7 Cal. 207.)

There are certain rules on this subject of misrepresentation it may be well to refer to. In the first place, the misrepresentation must be of something material, constituting an inducement or motive to the act of the other party, and by which he is actually misled to his injury. So it must be of something in regard to which the one party *places a known trust and confidence in the other. It must not be a mere matter of opinion, equally open to both parties for examination and inquiry, where neither party is presumed to trust to the other, but to rely on his own judgment.* So, if the representation be of such a nature that the other party *had no right to place reliance on it, and it was his own folly to give credence to it.* So, if a party does not choose to avail himself of the knowledge or means of knowledge open to him, he cannot be heard to say that he was deceived. It is his own folly not to use the knowledge within his reach. (1 Story's Eq. Jur., Secs. 195–201.)

The next reason given is that the claim to the bonds is founded upon a contract to deliver obligations which have more than one year to run, and therefore it is "an agreement that by its terms is not to be performed within one year from the making thereof," and must be in writing under the Statutes of Frauds. If the ordinance on which the rights of the company are founded can be termed an agreement, it is clear that it merely provides for the *immediate delivery of certain specified bonds, and as an agreement it is fully performed by the delivery of the bonds.* It is not, therefore, within the statute.

Even if it was within the statute, the record of the ordinance, with the vote on its passage, and the signature of the Mayor approving it, constitutes a writing within the statute. But the Board of Supervisors in passing this ordinance exercised the legislative power vested in them by the laws. The ordinances of the city possess the character, force, and effect of laws. (*McCracken* v. *San Francisco*, 16 Cal. 591; *Holland* v. *San Francisco*, 7 Cal. 377 ; *Zottman* v. *San Francisco*, 20 Cal. 161.)

*John H. Saunders*, and *John B. Felton*, for Defendants.

The question, then, is distinctly presented to the consideration of this Court, whether the Legislature can impose on a municipal corporation of the State the burden of exclusively building or aiding to build a work of general interest to the State, which is in no sense a work of local interest to the corporation on which the burden is imposed.

In this State the question comes up for the first time before these evils have arisen. No bonds have been issued under circumstances like the present, for in every other case the railroad aided has passed through the county called upon to subscribe, or has had its terminus there, and so the subscription can be justified as a local improvement.

In the case of *Pattison* v. *Board of Supervisors of Yuba County*, 13 Cal. 188, the road aided by the county was purely a local road, and the validity of the subscription was placed upon that ground.

In the case of *Robinson* v. *Bidwell et als.*, 22 Cal. 380, the road assisted by public subscription terminated at Sacramento.

The question as to whether the Act was unconstitutional on this ground was not raised in the main argument, but, to use the language of the Court, was " suggested " in the petition for rehearing. Mr. Justice Norton, in his opinion, puts the constitutionality of the subscription on the ground that he could not say that a road directly communicating with the

City of Sacramento, and passing through the county, was not a local work.

The leading New York cases go only to this extent, and while their reasoning justifies local taxation for local improvements, it also negatives the idea that a city or county can be exclusively taxed for an improvement which is in no sense a local one.

The leading case of *Bank of Rome* v. *The Village of Rome*, 18 N. Y. 32, was decided as late as September, A. D. 1858. The careful reasoning of the Court is remarkable. It says: "No Judge would, I think, venture to state a more restrictive rule than that the powers conferred on a municipal corporation must relate to the public interests of the territory or body of persons within its limits. Taking this definition, can a Court say that a railroad, *terminating at a village or city*, is so foreign to its public interests and those of its inhabitants, that it is beyond the legislative powers to authorize the village or city to become interested in its construction. The general judgment of men is, we all know, that a railroad, *so terminating*, does or at least may add to the value of property, promote trade, and contribute to the convenience of the inhabitants of the place."

The preceding case was decided on the authority of *Clarke* v. *Rochester*, 24 Barb. 474. But, in the latter case, the Court lays down the cardinal principle that a tax must be "general, and imposed on all, or all of a class of persons within prescribed limits or districts, upon some common principle or rule." (See page 481.)

Again: On page four hundred and eighty-two, the Court justifies these subscriptions on the sole ground that they are in aid of local improvements; and places its decision on the same ground on which it justifies the making and repairing of streets, that is, " upon the ground of benefit locally conferred."

Again: The Court, in resuming the points governing the case, (see page 489,) says, that works of internal improvement may be constructed by *general taxation*, and, *in case of local works, by local taxation.*

The two leading cases in Illinois are the cases of *Johnson* v. *County of Stark*, 24 Ill. 89, and *Perkins* v. *Lewis*, 24 Ill. 208. In the former of these cases, the Court puts its decision on the ground that " the construction of a railroad through a county is a county purpose," and expressly declines to pass upon the question whether a railroad, not confined to or penetrating the limits of a county or city, is a local work. The latter decision goes upon the authority of the former. These cases were decided in 1860.

The answer sets up that there had never been any legal assessment laid upon any of the capital stock of the Central Pacific Railroad, and that no assessment is now due thereon. There consequently would have been no bonds due from the city to the company, even if the city had subscribed. It further sets up that the railroad company never had acccepted the city's subscription under the Act of 1863.

Two consequences result from this : First—That the company had nothing that could be called a claim against the city for bonds under the Act of 1863. There was, therefore, nothing to compromise or settle. Second—That inasmuch as no bonds were due by the city to the company, the power to compromise had not vested in the Board of Supervisors. By the Act of 1864 the power to compromise does rest in said Board of Supervisors " only after and in case said Board of Supervisors shall be compelled by final judgment to execute and deliver the bonds under the Act of 1863."

(1.) The relation which the city assumes to the company under the Act of 1863, is that of *subscriber to its capital stock.* What are the *rights* of a subscriber to stock ? Is he exposed to bear the full burdens of the company while the other subscribers are exempt ? Can one subscriber be thus singled out as a packhorse for the rest ?

(2.) Again : These bonds are to be received at par, dollar for dollar. (See Section 4, Act 1863, p. 381.)

What is meant by receiving them at par ? Evidently, the meaning is that a dollar in bonds is equivalent to a dollar in cash from the other subscribers. But what mockery to speak

of receiving them at par, if all of them are to be issued whether the other stockholders pay or not. We assume, then in arguing this point, that these bonds were in the nature of assessments, to be issued as regular assessments on the capital stock of the company when called in.

The claims, then, which the Act of 1864 authorized the compromise and settlement of, were claims for bonds to be issued as assessments on stock. When did these claims arise? It is clear that no claim arose from the Act of 1863, independent of subscription by the city and acceptance by the company. Until such subscription and acceptance the Act could be repealed. If the companies had a claim against the city, it is very clear that no legislative action could divest such claim. In the case of *Aspinwall et al.* v. *Commissioners*, 22 How. U. S. 376, the Court decided that a railroad company acquired no claim against a city by such an act; that it could be repealed, and that a subscription after such repeal and bonds issued was void. The same point was decided in *Covington and Lexington Railroad Company* v. *Kenton County Court*, 12 B. Monroe, 144. In *People ex rel. Peoria and Oquawka Railroad Company* v. *County of Tazewell et al.*, 22 Ill. 156, the Court say: "Until the city or county has subscribed there is no privity between the road and county or city."

There has, then, been as yet no acceptance of the terms of the Act of 1863, by the railroad company. It is not pretended that there has ever been any subscription by the city to the capital stock of this company, so that no contract has ever been made between the city and this company.

So far, then, we have these two propositions: First—That the Act of 1863 gives nothing which can be called a *claim* to the railroad company against the city. Second—That as yet no claim has arisen by contract; first, because the railroad company has never accepted the conditions of the Act of 1863; second, because as a matter of fact no contract has ever been made for subscription between the company and the city.

If the Legislature, prior to this pretended compromise, had repealed the law of 1863, it would have found no vested claim of this company as an obstacle to its so doing. And this power of the Legislature to repeal the law is evidently the test of the existence of a claim; for if the claim exists, it cannot be affected by legislative action.

The alleged contract of compromise between the Board of Supervisors and the railroad company is void for want of consideration.

What does the company surrender as the consideration of such a contract? Evidently, nothing at all. It gives no stock, no obligation to build the road, no agreement to spend the bonds or any part thereof on the road. It simply says to the corporation: " I will release you from the public duty imposed upon you by statute of taxing the City of San Francisco, for a certain public purpose, for so much." But, clearly, no consideration moves from the company to the city, nor does the city receive any benefit from any source. True, it pays less money—but then it receives no public benefit. The private company can pay dividends with this money, and spend it as it chooses. Treating this compromise, then, as a contract, there is no consideration for it. The city receives nothing; the company gives nothing. (*Hampshire* v. *Franklin*, 16 Mass. 84; *Grogan* v. *The City of San Francisco*, 18 Cal. 590.)

No mandamus will lie to compel William Loewy to sign these bonds, because it is not a duty imposed upon him by his official position. The Clerk of the City and County of San Francisco is simply a County Clerk. His duties are defined by statute. (See Wood's Digest, Article 274, *et seq.*, p. 88.) Now his whole obligation to sign these bonds comes from the ordinance of the Board of Supervisors, and it is obvious that this Board, itself a Board of limited powers, has no authority to enlarge, change, or interfere with the duties imposed by statute on a wholly independent officer.

Some attempt to meet this was made on the argument by asserting that Loewy's obligation to sign these bonds comes

84

from the statute of 1863. But it is so clear that that statute is only incorporated into this ordinance because the Supervisors selected the form and mode of executing these bonds there pointed out, and that they could just as well have selected any other mode of executing them, that we will not argue the question at length.

If the wrong person be made a party to a proceeding in mandamus, the whole proceeding must be superseded.

" If, therefore, the Mayor and *ex officio* President of the Board of Supervisors had been made a party to this proceeding the whole proceeding would have been superseded." And counsel cite *Rex* v. *Mayor of Hartford*, Salkeld, 701 ; *Rex* v. *Mayor of Ripon*, Salkeld, 433.

In support of this proposition, contended for on the other side, and conceded by us, we add the cases of *The People ex rel. Commissioners of Highways of Poughkeepsie and Fishkill* v. *The Board of Supervisors of the County of Dutchess*, 1 Hill, 50, and the case of *People ex rel. McSpedon* v. *The Board of Supervisors*, 10 Abbot Prac. R. 233.

*John W. Dwinelle*, and *J. McM. Shafter*, in reply.

The County Clerk can be compelled, by mandate, to countersign the bonds in question.

The office of County Clerk is created by the Constitution. (Article VI, §7.) The only duties annexed to the office by the Constitution are those of Clerk of the District Court. (Ib. §7.) All other duties are to be defined by law. (Ib. §7.) It was competent, therefore, for the Legislature to throw upon the County Clerk the duty of countersigning the bonds of the city and county, by Laws of 1863.

Under the Civil Practice Act of California, the relator in this proceeding is entitled to any and all of the relief authorized by the case stated in the petition and affidavit.

" SECTION 147. The relief granted to the plaintiff, if there be no answer, shall not exceed that which he shall have demanded in his complaint; but in any other case, the Court

may grant him any relief consistent with the case made by the complaint, and embraced within the issue."

The return of the six Supervisors must be taken as the true return.

Boards of Supervisors are dealt with by law as an aggregate, and for this reason, service of process, in this and the like proceeding, is sufficient if made upon a majority, and the decision is binding upon their members, and upon their successors. (*People* v. *Contracting Board*, 20 How. Practice R. 206; *Maddox* v. *Graham*, 2 Metcalf, Ky. 156.)

The Board of Supervisors in *this* case are to act ministerially only, in execution of their own ordinance, which stands unrepealed, and unrepealable, having been accepted by the railroad.

Mandamus will be maintained against the council of a municipal corporation to compel the execution of a ministerial act, when it is evident that they are bound to perform it, and their conduct shows that they do not intend to do the act required. And this although there may be an action against the corporation for the delinquency, and such an action has been commenced and discontinued. (*Maddox* v. *Graham*, 2 Metcalf, Ky. 156.)

Where a party has no other adequate remedy, and his right is clear and undoubted, mandamus is not only the proper remedy, but is one of the most efficient proceedings known to the law for the enforcement of a right. (*People* v. *The Contracting Board*, 20 How. Pr. R. 206; *Commonwealth* v. *Pittsburg*, 34 Penn. State Rep. 496.)

By the Court, RHODES, J.

Proceedings were commenced in this Court for a mandamus, to compel the Clerk of the City and County of San Francisco to countersign four hundred of the bonds of said city and county, and to compel the Board of Supervisors of said city and county to perform all the duties required on their part for

the complete execution and delivery of the bonds to the Central Pacific Railroad Company, according to the provisions of the Acts of the Legislature of April 22, 1863, and April 4, 1864, and of the ordinance of said city and county, Number Five Hundred and Eighty-Two.

An answer, in form the answer of the Board of Supervisors, signed by the City and County Attorney and the assistant counsel, and verified by Frank McCoppin, one of the members of the Board of Supervisors, was filed in the case, and subsequent to the filing of this answer, six of the twelve Supervisors comprising the Board filed answers to the petition in their proper persons.

The counsel for the Board of Supervisors, upon the cause being called for hearing, filed their affidavit, stating that the answers of the six Supervisors were filed without the knowledge of said counsel, and that they had no information thereof until about twenty minutes before the meeting of the Court on that day; and they thereupon moved that those answers be stricken from the files of the Court. The counsel for the relator objected to the motion. It appears from the answer of the Board, that the Board, by resolution, requested the City and County Attorney to represent the Board and the members thereof in these proceedings, and authorized a committe of the Board to employ assistant counsel; and the counsel for the relator do not deny that Messrs. Saunders and Felton, the counsel who signed the answer of the Board, were duly authorized to appear for and represent the Board in the pending proceedings.

The answer of the six Supervisors, after the title of the cause, commences substantially in the following form: "For answer to the amended petition of the above named plaintiff, * * * one of the Supervisors of the City and County of San Francisco, and as such one of the defendants herein, for himself says that he is now and at the time of the commencement of this proceeding was one of the Supervisors of the City and County of San Francisco," etc.; and they do not purport to be the answer of the whole Board or of a majority of the

Board, nor do the six Supervisors pretend to answer for the Board in its aggregate capacity. The Board of Supervisors, organized and acting as one body, in its corporate capacity is the defendant, and not the individual Supervisors who collectively make up the Board, "for this is not a proceeding against any individual until an attachment issues." (Spencer, J., in *People* v. *Champion,* 16 John. 60.) The answer of a Supervisor or of a number of Supervisors, in his or their own name or names, whether as Supervisors or otherwise, could with no more propriety be regarded as the answer of the Board, than could the answers of a number of citizens included within the municipality that elected the Board. The Supervisors constitute the Board, and possess the powers, and are capable of discharging the functions conferred by law upon the Board, only when they are assembled as a body, in the manner prescribed by law. Admitting that the members of the Board may severally answer, suppose that all make default except one, and he answering shows that the Board were not required to perform the alleged duty, could the writ issue either to the Board or to the members who made default? If it could issue, the Board or the members would be required to perform an act, that had been determined in the action, one of the members was not by law required to perform. If it could not issue, it would then appear that the answer of one member, traversing or confessing and avoiding the matters averred in the petition, was a sufficient defense to the whole proceeding, notwithstanding that the other members admitted every allegation in the petition. If one half of the members should make default and the other half should show good cause, still greater absurdities, if possible, would be manifest.

The answers of the six Supervisors, so far as they relate to the matters stated in the petition, amount to no more than would their default, for they do not deny nor confess and avoid any fact alleged in the petition; but it is attempted, by means of the answers, to raise issues between themselves and the Board, or the remaining members of the Board, respecting certain facts alleged in the answer of the Board. It is difficult

to see how such issues could, under any rules of practice, be tried in this action, or how anything would result from the finding of the issues in their favor, as they do not demand any affirmative relief against either the Board or any of its members.

It is said in Tapping on Mandamus (p. 340) that the return to the writ should be made either by those to whom such writ is directed, or who are legally competent to execute it. There can be no question that the Board, and not any member or number of members, must execute the writ (if one should be issued) by the performance in its aggregate capacity, of the duty enjoined. The rules of the Civil Practice Act are as strictly applicable to the pleadings in mandamus as to those in any action, and under those rules no one may answer except those who are made, or are by the Court admitted as defendants. The remark found in the treatises on mandamus, that if two separate returns be made by different portions of the same corporation, the Court will take that which appears to be made by the majority, and other statements of similar import, do not mean that separate returns may be made by the several members of one "portion of the same corporation," as of one of the two Boards composing the legislative branch of the municipal government, and that the Court may ascertain which return had the majority of the members; but in order to have any standing it must be made as the return of the whole corporation, or at least of a particular portion or branch of it, if the writ is directed to it, and then if two returns are made in that capacity, the Court will ascertain which is the true return; that is to say, the return of the majority. There might not be a majority to any return if made by individual members, for each member might make a separate return differing essentially from that of each of the other members.

The motion must be allowed, and the answers of the six Supervisors stricken from the files.

The relator moves for judgment on the pleadings; and in support of the motion it is insisted among other things that the answer filed by the counsel for the defendant is only the answer of Supervisor McCoppin, who verified it, and that if

it is held to be either his answer or that of the Board, it does not state facts sufficient to constitute a defense to the action.

It is apparent upon inspection that it is not the answer of McCoppin, for its form is : " The Board of Supervisors do come, and for answer to the amended petition and affidavit, upon which the application of the above named plaintiff is made, allege and show," etc. The fact that it is verified by him has but slight, if any, tendency to show that it is his answer, and is entirely overcome by the fact that all the allegations are made in the name of the Board. If it can be regarded as a pleading in the cause, it must be held to be the answer of the Board of Supervisors.

The relator objects to the answer being considered as the answer of the Board, because it does not appear that the Board, as an aggregate body, resolved upon and made the return ; or as we understand the objection, that the Board has not by resolution adopted the return, as prepared by their counsel, nor directed what matters should be set forth in their answer. It is not doubted, that the counsel who signed and filed the answer of the Board, were duly authorized to represent them, and such being the case, they were fully empowered to appear for them in the action, and do all those things that counsel might lawfully do in behalf of a person who was the sole defendant. In this respect they bear the same relation to the Board that they do to the Clerk of the City and County, and their authority is the same in either case, and similar presumptions will be indulged in, that the answer is the answer of the persons or body that it purports to be. No authority is cited, holding that it must be stated in the answer to the petition, or the return to the alternative writ, made by a corporation or a Board forming a constituent part of the corporate authority, that the corporation or Board had resolved upon the return or answer ; and no reason suggests itself to our mind why such a statement should not be required in the petition, when a corporation is the relator, if it is necessary in the answer of the corporation. The general rules of pleading are substantially the same in mandamus as in other civil actions. (Tap. on

Man.; 8 N. Y. 348; *Commercial Bank* v. *Canal Commissioners*, 10 Wend. 26; *People* v. *Ransom*, 2 Comst. 490.)

Among the numerous cases found in our reports of actions brought by or against corporations, none is noticed in which it is stated that the corporation had resolved upon the complaint or answer, or had, as a corporate act, directed what either should contain; and in examining many of the cases cited by Tapping on Mandamus, no such statement is found or said to be required in the return; but it would appear from those cases that it was neither usual nor necessary—the presumption being that it was the return of the officer or body it purported to be. In *Mayor of Thetford's Case*, 1 Salk. 192, which was mandamus to the Mayor and Common Council, the return was made in the name of the corporation, but without the common seal, or the hand of the Mayor set to it. After search of precedents, which were found both ways, the Court held the return good, because they were estopped by the record to say it is not their act; and the Court say that the City of London every year makes an attorney, by warrant, without either sealing or signing. In *Rex* v. *Mayor of Abingdon*, 2 Salk. 431, which was mandamus to the Mayor, Bailiffs and Burgesses, the Mayor made a return, and brought it in to file it, and it was objected to as the return of the Mayor and a minority; but Mr. Chief Justice Holt said: "It is not fit that we should examine upon affidavits whether there was the consent of the majority." (See also *Rex* v. *St. John's Coll.*, 4 Mod. 241.)

But it is said that there are, in effect, two returns, or answers, that in the name of the Board, and that composed of the answers of the six Supervisors; and that as the latter is inconsistent with the former, and is made by one half of the members, it must overrule the answer made in the name of the Board—at least that, taking all the answers together, they make such an inconsistent return, that they must be all disregarded. We have already said that the members of the Board are not parties to this action, and their answers as such members must be disregarded. The presumption is that the answer made and filed by the counsel for the Board in their name is

the answer of the Board. "When a corporation aggregate, to which a writ is directed, has regularly resolved upon and made a return, individual dissentients cannot be allowed to dispute its propriety" (Tap. on Man. 341); but if the dissentients also file a return as the return of the corporation, the Court will ascertain which is the return of the majority; and doubtless without holding to the strict rule in 1 Salk. 192, that the members are estopped to say that the return is not the return of the majority, they may allege that the return is not the return of the majority, or has not been resolved upon by the corporation, and thereupon have the collateral issue determined by the Court. That, however, is not the case before us, but the dissentients merely undertake to controvert certain of the facts alleged in the answer of the Board, in avoidance of the facts stated in the petition.

The question then recurs, is the relator entitled to judgment on the pleadings, regarding the answer verified by McCoppin as the answer of the Board of Supervisors? The motion of the relator to that effect is equivalent to a demurrer to the answer, on the ground that it does not state facts sufficient to constitute a defense. Section thirty-seven of the Practice Act providing that "All the forms of pleading in civil actions, and the rules by which the sufficiency of the pleadings shall be determined, shall be those prescribed in this Act" is applicable to proceedings in mandamus.

The principal facts upon which the right of the relator depends, briefly stated, are as follows: The Board of Supervisors had been commanded by the final judgment of this Court to subscribe six hundred thousand dollars to the stock of the Central Pacific Railroad Company, and to issue the bonds of the city and county in payment of such subscription, pursuant to the provisions of the Act of April 22, 1863; that afterward, under the provisions of the Act of April 4, 1864, the Board of Supervisors passed Ordinance Number Five Hundred and Eighty-Two, approved June 21, 1864, the terms of which were accepted by the relator, by which the parties compromised the claims of the railroad company upon the

85

city and county, under the Act of 1863, it being agreed that
the Board should, in lieu of making the subscription and
delivering the bonds to the amount of six hundred thousand
dollars, deliver such bonds only to the amount of four hun-
dred thousand dollars, without making any subscription to the
stock, the bonds to be delivered to the relator, upon condition
that they should be accepted in full discharge and satisfaction
of all obligations, claims, etc., of the company against the
city and county; that the company tendered to the city and
county a full release and discharge of said obligations, claims,
etc., to be delivered on the receipt of said bonds; that the
Mayor, Auditor and Treasurer of said city and county, whose
duty it was to prepare and sign said bonds, were in certain
proceedings in this Court wherein they were the defendants
and the company was the relator, ordered by a peremptory
writ of mandamus, to execute and deliver without delay, to
the company the four hundred bonds, of one thousand dollars
each, as in said ordinance provided. It seems not to be
doubted, and the decision in the last mentioned case (*People*
v. *Coon, Mayor, et al.*, 26 Cal. 635) settles the point, that the
four hundred bonds to be issued under Ordinance Number Five
Hundred and Eighty-Two are parcel of the six hundred bonds
provided for in the Act of 1863, they differing from the latter
only in the date they were to bear.

In examining the answer somewhat in detail the only ques-
tion will be whether it states facts sufficient to constitute a
defense to the action, and many of the objections taken in the
argument by the counsel for the relator, which might have
been considered if made the grounds of a special demurrer, or
of some proper motion to strike out, etc., must be disregarded.

The defendants' denial that they "became or were lawfully
or duly or otherwise bound or obliged to subscribe six hun-
dred thousand dollars, or any other sum to the capital stock"
of the company, or to execute or deliver any bonds, is not the
denial of any fact alleged in the petition. The judgment in
the case of *The People ex rel. Central Pacific Railroad Com-
pany* v. *The Board of Supervisors, etc.*, whereby the defendants

were commanded to subscribe to the stock not being denied stands admitted, and the denial that they were bound to obey the judgment, is only a denial of a conclusion or principle of law. (*People* v. *Commissioners of Fort Edward*, 11 How. Pr. 89.) If it is permitted to show collaterally that the judgment is void, the points of invalidity must be specified.

The remarks we have just made are applicable to the denial that they were "bound by law to execute or deliver" the four hundred bonds to the company, and the accompanying averment that Ordinance Number Five Hundred and Eighty-Two is " wholly illegal and void." The facts from which the Court might draw the inference that the ordinance was void, and not the assumed inference, should have been stated. The further allegation that neither the Board nor the Legislature have the right or power to make a donation to the company of four hundred thousand dollars of the money of the City and County of San Francisco, even assuming that it appeared that such a donation had been attempted, is rather a specification of a ground of demurrer, than an allegation of a fact.

The next averment of the answer is that the election in the City and County of San Francisco, held pursuant to the Act of April 22, 1863—the Act authorizing the subscription to the stock of the company " was not fairly, or properly or legally conducted, but was affected, influenced and controlled by corruption and bribery" practised and perpetrated by the company and its agents and employés; and they specify nine instances, in which the alleged agent of the company employed the company's money, to corruptly influence the electors, to vote in favor of the proposition, to subscribe to the stock of the company. It will be seen on reading the Act of April 22, 1863, (Statutes 1863, p. 380,) that the Board could not be required, and were not permitted to subscribe to the capital stock of the company, unless a majority of those voting upon the proposition voted in favor of the subscription. It was absolutely essential, therefore, in instituting proceedings against the Board to compel the subscription to be made, that the relator should allege, and if it was denied by the Board, to

prove on the trial, that a majority of the votes cast were in favor of the proposition. The fact must have been found by the Court or have been admitted by the pleadings—in other words the facts must have been alleged, and must have been true—for it was the fundamental fact in the action, and in its absence the Court could not have rendered the judgment that was pronounced, commanding the Board to make the subscription and issue the bonds. The matter thus became *res judicata*, and not subject to be again litigated in another action between the same parties. It is unnecessary to determine whether the alleged bribery and corruption could have been shown at the time the vote was canvassed, or in proceedings to contest the election, but if not admissible on either of those occasions, it would have been admissible in the proceedings against the Board to compel them to make the subscription, if they had alleged that the result at the election had been procured by those means. But now, in addition to the reason already given for excluding the alleged acts of bribery and corruption, they are immaterial and irrelevant, as they do not in any manner avoid the compromise, on which the relator proceeds in this action.

The allegations respecting the failure of the Board to procure an inspection of the books of the company, and to procure answers from the company to questions propounded to them, are so clearly immaterial that they require no notice.

They allege that the passage and approval of Ordinance Number Five Hundred and Eighty-Two were procured by the false and fraudulent representation of the company, that if the proposed compromise were not made the whole subscription of six hundred thousand dollars, with a year's interest, would be immediately due; but it is not stated that any fact was falsely and fraudulently stated, from which the inference might be drawn that the whole amount of bonds and interest was then due, and in the absence of an allegation that they were ignorant of the facts, upon the existence or occurrence of which the subscription became due, we must hold that the alleged representation was of a conclusion of law drawn from

existing facts known to the defendants. Conceding the point contended for by the defendants, that the six hundred thousand dollars in bonds were payable in instalments, as assessments were called in from the stockholders generally, it yet is not alleged either that the company represented that assessments to the full amount had been levied, or that the Board were ignorant that they had not been so levied.

The defendants allege that Ordinance Number Five Hundred and Eighty-Two was never published and printed, as required by law; and by that which follows in the same paragraph we understand them to mean, not that the ordinance in the words in which it passed was not published, but that the several provisions of the law directly or indirectly referred to in the ordinance were not published with it. We do not understand that such a publication is required, but it was only necessary to publish the ordinance as passed—all persons being charged with notice of a public Act of the Legislature on which an ordinance is founded.

It is next alleged that the company did not accept said compromise after the passage of the ordinance, and did not comply with the conditions expressed in the ordinance. It is not stated wherein they failed to comply, and therefore that portion of the allegation is insufficient. They set out in the answer the resolution of the company accepting the terms of the ordinance, which had then passed to print, and say that they are advised that such resolution is not an acceptance of the terms of the compromise proposed in the ordinance. The objection amounts in substance to a demurrer to the resolution that it is not sufficient in law to amount to an assent on the part of the company to the terms of the compromise contained in the ordinance. It is not requisite that the assent to or acceptance of the terms of the compromise should have been made by the company after the ordinance had been approved by the Mayor. The company might by some proper corporate action have proposed the terms of the compromise, and the Board might thereupon have passed an ordinance, as they have done, and such acts would have con-

stituted an assent by each party to the terms. The question as to how the contract must be proven is quite different from that which relates to the time of assenting to the terms proposed. It may be remarked that the commencing of this action, as well as the previous action against the Mayor, Auditor and Treasurer are very indicative of an acceptance by the company, even if it could be held that the acceptance of the terms by the company should have been subsequent to the approval of the ordinance.

The defendants say that the alleged contract, in order to be binding, must have been made in writing, and signed by the party to be charged. It requires no citation of authority to prove that a municipal corporation may contract by ordinance directly, and that a contract made in that manner as fully satisfies the Statute of Frauds as one made by the agents of the corporation who have been authorized to execute the contract. But they insist that the ordinance is not a contract; that it is but a resolution to do a certain thing—that is, to tender to the company certain bonds; that the company resolved to receive bonds if all of them were tendered; and that when the bonds have been tendered by the city and received by the company, and the company have executed to the city a release, as provided for, then the parties will have made an executed contract; but as yet there is no contract between the parties, the ordinance of the city and the resolution of the company amounting to nothing more than declarations of intention to enter into an executed contract. This certainly was not the view of the Court in *The People* v. *Coon et al.*, nor do we think the position tenable. True, the company say, after accepting the proposal contained in the ordinance, that such acceptance shall be effectual only when the whole of the bonds shall have been delivered to them; but, taking the whole transactions of the parties together, it is manifest that the parties entered into a contract of compromise, but that the company would not yield their rights, or discharge their claims, under the Act of 1863, until the city had complied with the terms of the compromise contract. The parties did

not contemplate a further contract, but the company, in assent-
ing to the contract, insisted on a performance of its terms by
the city, before the company would release the city from the
obligations cast on her by the Act of 1863.

The defendants further say that the company have not, by
any corporate act, consented to be bound by the provisions of
the Act of 1863, nor agreed to receive the bonds mentioned in
the Act. Such consent of the company was not required by
the Act of 1864 to be the basis of the compromise, but it was
only requisite that this Court should have commanded the
Board to execute and deliver the bonds. The commencing of
the proceedings by the company against the Board was suffi-
cient evidence, in that cause, of the acceptance by the com-
pany of all the terms of the Act, and the judgment having
been rendered compelling the Board to make the subscription
and issue the bonds, the inquiry now whether the company
had in fact agreed to receive the bonds which they, in that
proceeding, demanded should be issued to them, is immaterial.

The denial in general terms that they became bound to exe-
cute and deliver the bonds to the amount of six hundred thou-
sand dollars, or that they have ever been compelled by the
judgment of this Court to execute or deliver the bonds, forms
no answer to the allegation in the petition that a judgment of
this Court was rendered by which they were commanded, by
the peremptory mandate of the Court to execute and deliver
the bonds, as no fact is alleged tending to invalidate the judg-
ment. We have sufficiently indicated our opinion that a de-
nial of this character is not a denial of a fact, but of a conclu-
sion of law, and would be more properly classed among the
grounds of demurrer than the allegations of the answer.

The question arising upon the facts alleged by the defend-
ants that the company's road does not have a terminus at San
Francisco, nor at any point nearer than the City of Sacra-
mento, that the work is one of general interest to the whole
State, but not of local interest to San Francisco, and that the
city has subscribed to the stock of the San Francisco and
San José Railroad, which has a terminus at San Francisco,

etc., have been discussed by counsel with great ability, but the great length of the opinion will preclude us from considering them in detail. They are resolvable into the question whether the Legislature can impose upon a municipal corporation the burden of building or aiding in building a work which is in no sense a work of local interest to the corporation, but which is of general interest to the people of the State. The counsel for the defendants deny the power to the Legislature, and say that the facts alleged by the Board show that the railroad is not of local interest to the city. By the provisions of the Act of 1863, the city was required to become a subscriber, to a certain amount, to the capital stock of the railroad company, in the event that, at the election provided for in the Act, a majority of the electors of the city, voting on the proposition to subscribe, should cast their votes in favor of the proposition. The majority of the votes having been cast in favor of the proposition to subscribe, it became the duty of the Board of Supervisors to make a subscription to the amount of six hundred thousand dollars, whereupon the city would become a stockholder in the corporation, with all the rights of other stockholders, and subject to all the liabilities of other stockholders, except certain ones, from which she was exempted by the provisions of the Act, and having the right to pay her subscriptions in her bonds instead of money. Upon the subscription being made, and the bonds, or an instalment of them equal to the assessments upon other stockholders, being delivered to the company it could not be said that the city had made a donation to the company, or had been charged with the expenses of a work which was being constructed for the benefit of the public, in any other sense than the same could be said of any stockholder in the company, but she would be a stockholder in a work which was being prosecuted for the benefit of all the stockholders in the company. True, the work might not result in profit, but that is a risk incident to all enterprises of the kind. It became the duty of the city to subscribe to the stock, and to deliver her bonds to the company, and she was commanded so to do by the Court; and the

company having accepted the terms of the proposed subscription, a claim accrued to the company against the city, that she should make the subscription and deliver the bonds, and thereby assume such liabilities as a stockholder, as were required of or cast upon her by law. But the city not wishing to become a stockholder and assume the liabilities incident to that relation, enters into a compromise with the company, under the authority of the Act of 1864, by which it is agreed that the city shall not subscribe nor deliver the stipulated amount of bonds, nor incur the liabilities of a stockholder, and that in satisfaction of the claim of the company against her, she shall deliver to the company a certain less amount of her bonds. The bonds are the price she pays in extinguishment of the company's claim against her; and the transaction cannot be regarded as a donation in any other sense than as any compromise may be, nor as a burden imposed on her to aid in the construction of a public work. The facts, therefore, that the work is not one of local interest to the city, and that she has already subscribed to a railroad that is of local interest to her, are immaterial and constitute no defense to the action.

The remaining allegations of the answer have been disposed of in considering other points in the case, but it may be added that in our view it makes no difference as to the validity of the compromise, whether the bonds were payable in instalments or in gross, nor whether a legal assessment had been laid on the capital stock of the company, for irrespective of the time when the bonds under the Act of 1863 might become due, the company held a claim against the city, which was a proper subject of, and formed a good consideration for, a compromise.

The answer of the Clerk of the City and County remains to be considered. It is provided in section five of the Act of 1863, authorizing the subscription of the city to the stock of the company, that upon the bonds being signed by the Pacific Railroad Loan Commissioners, they "shall be presented by the President of the Board of Supervisors to the Clerk of said city and county, who shall countersign the same as such Clerk,

86

in the presence of a quorum of such Board, at a meeting thereof," etc.; and it is provided by Ordinance Number Five Hundred and Eighty-Two that the bonds thereby required to be issued should be executed in all respects, except as to date, as required by the Act of 1863. The relator alleges in his petition that when the bonds had been signed by the Pacific Railroad. Commissioners they were, by the President of the Board, at a meeting of the Board, in the presence of a quorum thereof, on the 7th day of September, 1864, presented to the Clerk for the purpose of being countersigned by him, in the presence of a quorum of the Board, but that he did not countersign the same; and that on the 27th day of September the relator notified him that there would be a meeting of the Board on the evening of that day, and requested him to attend and complete the countersigning of the bonds, but that the Clerk did not present himself and countersign or offer to countersign any of the bonds. The relator shows that at the meeting on the 27th of September the Clerk was not requested by the Board to countersign the bonds, and had no opportunity so to do; but, on the contrary, that the Board refused to adopt a resolution requesting the Clerk to countersign the bonds, and, by resolution, directed him to deposit them with the County Treasurer, subject to the order of the Board, which was immediately done.

The Clerk denies that on the 7th of September, or at any other time or meeting of the Board, he had an opportunity to countersign the bonds, or that he was ever authorized to countersign them; and he denies that he has authority so to do without the request of the Board. The bonds, from the first step in their preparation up to their delivery to the company, are under the control of the Board, and everything relating to their execution is done under the direction of the Board. The Clerk of the City and County, in proceeding to countersign them, is as completely subject to their orders, as the Clerk of the Board is, in entering in their journal the fact of countersigning, and the number, date and amount of the bonds. It will not be contended that the Clerk could have proceeded

to countersign the bonds after the Board directed him to deposit them with the Treasurer, and it is equally clear that he had no authority to proceed, unless the Board directed him to do so, or afforded him an opportunity to proceed with the countersigning in their presence.   His denial raises a material issue of fact, for if his answer is true in that respect, and the motion admits it to be true, he is not in default in the performance of the duties imposed upon him by the Act, and continued by the ordinance.

Our conclusion is that the answer of the Board does not state facts sufficient to constitute a defense; and that the answer of the Clerk sets up a valid defense to the action.

The point presented by the defendants that as the relator is not entitled to all the relief he claims, the peremptory writ must be denied, may be passed upon now, though strictly speaking, the issues of fact raised by the answer of the Clerk should be first disposed of upon the evidence that may be introduced by the parties, but the action, so far as the Clerk is concerned, cannot be disposed of under this motion, on the ground of a misjoinder of parties defendant or of causes of action, as those objections should have been taken by demurrer, for if they exist they are apparent upon the face of the petition.   The defendant cites two cases: *The People* v. *The Board, etc., of Dutchess,* 1 Hill, 50, and *The People* v. *The Board, etc.,* 10 Abbot's Pr. 233, to sustain the proposition "that if the relator is not entitled to what he demands in the alternative writ, his motion for a peremptory writ should be denied, though it appear that he is entitled to a portion of the relief." The doctrine of those cases is that the peremptory writ should follow the alternative writ, and that if the alternative writ demands too much—something more than the relator is entitled to—the judgment must be for the defendant; for there cannot be a judgment for the relator for a part of the relief demanded in the writ and for the defendant for the other part. To the same effect also is Tappan on Mandamus, 402, 403. Without commenting upon the distinctions that might be found between such a case, when the question is: Shall the alterna-

tive writ be made peremptory? and a case in which the proceeding is by petition and motion for a peremptory writ, when the Court would doubtless have the right to frame the writ according to the exigencies of the case; we think the point may be solved on other principles. A proceeding to procure the issuing of a writ of mandamus is a civil action. In *Kendall* v. *United States*, 12 Peters, 615, the Court say: "It is an action or suit brought in a Court of justice, asserting a right, and is prosecuted according to the forms of judicial proceedings." (See *People* v. *Ransom*, 2 Comst. 490; *Commercial Bank* v. *Canal Commissioners*, 10 Wend. 26; *Tyler* v. *Houghton*, 25 Cal. 26.) The final determination of the Court in the matter is a judgment, and if rendered in any Court but the Supreme Court an appeal lies from the judgment. The parties appear, and by their pleadings form issues, and if of fact they may be tried by a jury, and new trials may be had. The relator may in the same action recover the damages he may have sustained, and execution may issue for the damages and costs. In *People* v. *Croton Aqueduct Board*, 5 Abbott's Pr. 372, it is held that the rules of the code of New York do not apply to mandamus, because Sec. 471 expressly excludes from their operation that class of cases. There is no such reservation in our Practice Act, and in our opinion the general rules of that Act are applicable to mandamus, in the same manner as to an action for an injunction or of *quo warranto;* and whatever may be the rule when the relator, after having procured the alternative writ, moves for the peremptory writ, we have no doubt that, when the relator proceeds by petition and notice for the peremptory writ, without procuring an alternative writ, the Court, under the enlarged discretion conferred by Sec. 147, may grant any relief consistent with the case made by the petition, and embraced within the issues, although it may be only a part of that demanded in the prayer of the petition.

We have omitted to comment on many of the cases cited by the respective counsel, for the obvious reason that the attempt to do so, in a case brought before this Court, as a

Court of original jurisdiction, in which all the numerous points are presented that suggest themselves to the minds of able and ingenious counsel, as is usual at *nisi prius* trials, would involve very great labor, without any corresponding benefit.

The relator is entitled to judgment for a peremptory mandamus on the pleadings against the Board of Supervisors, but not against the Clerk of the City and County, and as to him the proceeding must be dismissed.

SAWYER, J., and SHAFTER, J., concurring specially.

We are not prepared to say that the individual answers of the six Supervisors, alleging a willingness to perform the duties sought to be enforced, ought to be struck out. But disregarding them, and conceding the answer verified by McCoppin to be the answer of the Board, we are satisfied that said answer does not "raise a question as to a matter of fact essential to the determination of the motion;" and that complainants are entitled to a peremptory mandamus against the Board of Supervisors, as prayed for in the petition.

Loewy, the County Clerk, substantially denies that he had an opportunity to countersign the bonds, and the inference from his answer is that he is ready to countersign when a proper opportunity is given. We think his answer raises a material issue as to him; but we do not understand that the relators propose to put in any evidence on that issue; and taking the answer as true, Loewy is not in default. The proceeding must, therefore, be dismissed as to Loewy, and a peremptory writ of mandamus issued against the Board of Supervisors.