County Commissioners Columbia Co. vs. Bryson—Syllabus.

THE COUNTY COMMISSIONERS OF COLUMBIA COUNTY VS. WILLIAM BRYSON, *et al.*

1. A writ of error is not the proper process to bring up for review an order or decree in a suit in equity; the only method known to our statutes is an appeal.   *Held,*

2. Courts of equity will not interfere by injunction to stay proceedings upon a writ of *mandamus.*

3. An injunction will not be granted if the party seeking it could, by proper vigilance, have protected himself by the ordinary means at law, or where the case in equity proceeds upon a defence equally available at law.

4. A proceeding by *mandamus* does not abate by a change in the membership of the municipal body, as by the resignation of members of a Board of County Commissioners and the appointment of new members.

Writ of error to the Circuit Court for Columbia County. The case is stated in the opinion of the court.

*McLeod, Niblack & Broome* for Plaintiffs in Error.

*J. J. Finley* and *Sanderson & L'Engle* for Defendants in Error.

Mr. Justice HART, on account of interest, did not sit in this case.

RANDALL, C. J., delivered the opinion of the Court.

This was a suit in chancery, brought by the County Commissioners of Columbia County against William Bryson and the sheriff of that county, for an injunction and general relief. The Judge of the Circuit Court refused to grant the injunction and dismissed the bill, whereupon the complainants sued out a *writ of error*, in pursuance of which writ a return is made to this court.

The Supreme Court of this State, in Bradford, executor, vs. Marvin, 2 Fla., 101, decided that a writ of error could not be used as a process to remove an equity cause to this court. This is in accordance with the terms of the statute, and with the uniform practice where the distinction between suits at law and in equity has not been abolished.

However, it may be proper to refer to some of the questions argued by counsel in presenting the case. The facts are briefly these:

James Stephenson and four others, as county commissioners of Columbia county, filed their bill in Columbia Circuit Court, praying an injunction against Bryson and the sheriff of that county, to restrain them from serving and enforcing a peremptory writ of *mandamus* issued out of the Circuit Court. In 1860, Bryson filed his petition for a writ

County Commissioners Columbia Co. vs. Bryson—Opinion of Court.

of *mandamus*, to be issued for the purpose of compelling Silas L. Niblack and others, then county commissioners, to levy a tax to pay certain coupons representing the interest upon bonds issued by the commissioners under the 22d section of the act known as the Internal Improvement Act, approved January 6, 1855, in payment of stock subscribed by them in the Florida, Atlantic and Gulf Central Railroad Company. An alternative writ was issued and served, and on hearing the return of the commissioners, the court awarded a peremptory writ of *mandamus*, in pursuance of which a tax was levied, and the collector seized property to satisfy the tax against one of the citizens, when Bryson's counsel requested the collector to suspend proceedings for the time, and the tax was not collected. The matter remained thus until 1867, when Bryson moved that another peremptory writ be issued under the proceedings had in 1860, and another writ was awarded to be directed to Geo. B. Smithson and others, the successors of Niblack and others, as county commissioners.

From the order awarding this writ an appeal was taken, bond given, &c., but soon afterwards the courthouse and records of Columbia county were destroyed by fire, to-wit: October 9th, 1867. At the spring term, 1868, the records in the case were re-established, and the court thereupon directed a peremptory writ to issue as soon as a board of county commissioners should be organized. On the 15th October, 1868, this writ was issued pursuant to the order made in April, 1867, directed to and commanding the complainants to levy and collect the tax, and the writ was served upon the complainants. No action was taken toward the further prosecution of the appeal, nor for its dismissal.

It is claimed that the former writ was directed to the commissioners named, but not to their " successors in office," and hence that the force of the writ was expended, and no alias writ could issue to the successors in office. It is further claimed that no order could be made by the Circuit Judge

after the appeal, until the appeal was disposed of by the Supreme Court; that they were deprived of the benefits of their appeal by the destruction of the records; that they relied on their return to the alternative writ; that the counties of Suwannee and Bradford had been taken from the territory of Columbia county without the consent of the latter, and that the new counties had not been made parties in the proceeding, nor had Columbia county any means of compelling them to contribute; that the only proper remedy of Bryson was by suit at law upon the bonds or the coupons, and that the act under which the bonds were issued was unconstitutional and void, and the bonds were therefore void. It is further claimed that new facts have come to their knowledge, which, if known and pleaded, would have led to a different result; but no new facts are stated in the bill which can avail the complainants.

It is further claimed that the basis upon which the bonds were issued was in part slave property, which has been taken from the citizens by the State without making compensation therefor, and that the new constitution prohibits the levying of taxes upon persons for paying the interest of any bonds issued by counties or corporations for the benefit of any chartered company, and therefore the tax cannot be levied at all. Wherefore, the complainants pray for an injunction and for general relief. Upon presenting the motion for injunction upon the bill and accompanying affidavit, the judge denied the motion and dismissed the bill, which order is alleged to be erroneous.

We are met here by the objection, on the part of the appellees, that courts of equity will not interfere by injunction to stay proceedings on a *mandamus.* Story's Eq. Juris., sec. 893, says: There are cases in which courts of equity will not exercise jurisdiction by way of injunction to stay proceedings at law in any criminal matters, or in cases not strictly of a civil nature, as, for instance, they will not grant an injunction to stay proceedings on a *mandamus*, or an in-

County Commissioners Columbia Co. vs. Bryson—Opinion of Court.

dictment, or an information, or a writ of prohibition. 2 Ves., 396.

Lord Hardwicke allowed a demurrer to a bill for an injunction to stay proceedings on a *mandamus* issued to compel the lord of a manor to hold a court, and said that "the court has no jurisdiction to enjoin proceedings on a *mandamus*." An injunction will not be granted if the person seeking it could, by proper vigilance, have protected himself by the ordinary means at law. See 3 Dan. Pl. and Pr., 1723, 3 Am. ed., where numerous authorities are cited; and Story's Eq. Juris., sec. 894, quotes: "Courts of equity will not relieve against a judgment at law, where the case in equity proceeds upon a defence equally available at law, but the plaintiff ought to establish some special ground of relief. The doctrine goes yet farther, and it may be asserted to be a general rule, that a defence cannot be set up as the ground of a bill in equity for an injunction, which has been fully and fairly tried at law, although it may be the opinion of a court of equity that the defence ought to have been sustained at law. If there are any exceptions to this rule, they must be of a very special nature. But relief will be granted where the defence could not, at the time or under the circumstances, be made available at law without any laches of the party." This question was considered by this court in Dibble vs. Truluck, 12 Fla., 185.

If it were competent to grant an injunction in a case of *mandamus* to restrain the writ, it is not considered that the circumstances of the present case present a proper case for injunction. The "newly discovered facts," as disclosed, are facts which were patent at the trial, and if their presence was not then *discovered*, it was not because the discovery was difficult. Indeed, it appears from the bill that all the material grounds of defence were urged before the chancellor, and the complainants were embarrassed for a time, and prevented from prosecuting their appeal by the destruction of the record; but in the meantime, no advantage was

286 SUPREME COURT.

County Commissioners Columbia Co. vs. Bryson—Opinion of Court.

taken of them by the appellee by dismissing their appeal, and on the restoration of the records, the appeal could have been prosecuted; and, for aught that appears, the appeal is yet pending, and the same questions suggested by the bill are presented in the record, and may be heard and determined in that proceeding, unless the parties have abandoned the appeal.

The question of the constitutionality of the act of the Legislature authorizing the issuing of the bonds is also necessarily involved in the merits of the case, and may be presented to this court upon the appeal.

It is further urged that the original writ of *mandamus* was directed to the then county commissioners, and not to their successors in office; and hence, when those commissioners went out of office, the writ was fully expended and defunct. But it appears that the writ was directed to them as commissioners, and not as individuals, no personal claim being made upon them except that they perform an official duty enjoined by law.

On this subject, we give the language of the court in the case of Graham, *et al.*, vs. Maddox, the City of Maysville and others, found in the Am. Law Reg., vol. 6, 589, (affirmed in 2 Met. Ky., 56,) in which the judge says: "The interest is still in arrears, and the authorities are in default, and it can be corrected in no other *effective* way but by a *mandamus* to collect as well as to levy the tax. It will not do for the defendants to say there has been no refusal to levy; they have at least failed to levy. They have not collected the money or paid the interest, and the object of the proceeding is to require them to do it. The majority of the council of 1857 had this motion for a *mandamus* continued, and it passed over necessarily to the present term. In the meantime, by a regular election under the charter of the city, the members of the council have changed, and the present members contend that no *mandamus* should issue, because they are not in actual default. They oppose the constitutionality

of the subscription and tax, and are determined not to levy or collect it. This proceeding is intended to operate upon the council. The council is a perpetual body, though its members may change; and that body being the authority required by law to make this levy, has been in default as to the performance of this duty since a proper period for levy in 1857. The change in the membership does not alter the fact that the council has not yet performed that duty. The proceeding did not abate by the change of some of the members of the council. In the present stage of the proceeding, it was against them as members of the council—that is, against the council, not as individuals, and the change of membership may have rendered it necessary, as was done, to renew the notice, or serve it upon the new members, but it would not abate the proceeding. Were the positions contended for by the defendants correct, how easy it would be to baffle forever the creditors, and prevent the enforcement of this duty. The order being made for a levy, with but little time for collection, before another term of the court at which it could be ascertained whether the order was complied with, new members would come in, and they could set up the plea that they should not be held responsible for the acts of their predecessors. The old members could say they were out of office, and had no power to make the levy, and thus the matter would go on in one continual round from year to year, and the plaintiffs would be forever denied their rights. Such cannot be the law or a correct practice. It seems to the court, therefore, that the correct practice is to regard the duty as one to be performed by the council as a body, which is the same from year to year, though the membership may change. To bring the body before the court, it is necessary to have the process served on the members. The default of the council in the performance of a duty in 1857, is still a default of the council in 1858; and, although the court could not and would not attach or punish members of the council of 1858 for the default of different members

of 1857, yet the change of membership would not alter the fact that the legal body or assembly was in default, nor affect the powers of the court to require the duty to be performed; and upon the failure of the body, after such requisition of the court, it would be competent for the court to use such measures against the individuals composing the body, to enforce the requisition, as the law provides."

But it is unnecessary to pursue the subject further in this case. We have indicated that, in our opinion, the bill in equity cannot be maintained, and lest the appellants might be embarrassed by a direct adjudication of the several matters contained in the bill, in case the parties should see fit to take further steps in the appeal or otherwise, we think it our duty to dispose of the case by dismissing the writ of error, although the cause was fully, and, we will say, very ably and industriously presented upon the merits.

The writ of error is dismissed.