Wren v. The City of Indianapolis.

No. 10,030.

WREN v. THE CITY OF INDIANAPOLIS.

CITY.—*Street Improvements.—Estimates.—Mandate.—Parties.*—Mandate lies against a city as a corporation at the suit of a contractor, to compel the making of correct estimates of work done by him in the improvement of its streets, according to the terms of his contract, so far as the same may be chargeable to abutting real estate, and neither the city engineer nor any other city officer is a necessary party.

SAME.—*Letting of Contract.—Ordinance. — Complaint.*—In such case the city can not object, on demurrer, to the complaint, that it does not show that the letting of the work was properly advertised, or that a grade was fixed by the ordinance providing for the improvement, or that the work was not finished according to contract, the city's fault preventing; and where it is averred that the ordinance was passed by a unanimous vote of the council, it is not necessary, in view of the statute, R. S. 1881, section 3164, to allege that there was a petition therefor.

PRACTICE.—*Mandate.—Jurisdiction.*—In a proceeding for mandamus, jurisdiction is acquired not by summons, but by an alternative writ; this writ may be waived by an appearance, and the complaint or application may be tested by demurrer.

From the Superior Court of Marion County.

*T. A. Hendricks, A. W. Hendricks, C. Baker, O. B. Hord, A. Baker, E. Daniels, J. C. Denny* and *E. T. Johnson,* for appellant.

*C. S. Denny,* for appellee.

ZOLLARS, J.—In appellant's complaint against the city of Indianapolis, its board of aldermen, common council, and civil engineer, Robert M. Pattison, he asks for a mandate to compel the making of an estimate and assessment for a street improvement. The averments of the complaint are substantially as follows:

On the 28th day of June, 1865, the common council of the city, by an unanimous vote, passed an ordinance for the grading and gravelling of South Tennessee street, and the sidewalks, between Garden and McCarty streets. The ordinance provided that the expense of the grading and gravelling, except at the crossing of streets and alleys, should be assessed against and collected from the owners of lots abutting upon the street. It further provided for the width of the grading and gravelling, and the manner of the gravelling.

There was no further provision in relation to the grading, except that the engineer was directed to set the proper stakes. The engineer was therein further directed to advertise for sealed proposals for the doing of the work. The contract was awarded to appellant, and on the 28th day of August, 1865, a written contract was entered into by appellant and the city. In this the amounts to be received by appellant for the grading and gravelling were separately stated.

It was also stipulated that appellant should collect from the property-owners, at his own expense, except for the portion occupied by cross streets and alleys, which was to be paid by the city. The manner and character of the grading and gravelling were provided for as in the ordinance. The work was to be finished on or before the 15th day of December, 1865, to the satisfaction of the engineer. If not so finished, the common council was to have the privilege of reletting the contract. After the written contract was entered into, appellant and the city engineer made a verbal contract that the improvement should be extended north and south, so as to include the crossings of Garden and McCarty streets. The work upon the extension was to be of the same character as provided in the written contract for other portions of the street, and was to be paid for by the city at the rates fixed in that contract. By various acts of the common council and board of aldermen, this verbal agreement was approved and ratified. On account of delays caused by the city, the time for the completion of the work was extended until the 31st day of October, 1870.

On a portion of Tennessee street within the limits of the improvement contracted for, to wit, a square between Garden and Merrill streets, there was a railroad track owned and controlled by a mill company. This track was there by the license of the city. It was on a level with the grade as fixed by the engineer. In order to gravel the street to the depth of sixteen inches, as provided in the contract, it was necessary that the track should be raised that much. Before, and

at the time the contract was made, and continuously there-after, the common council and the city engineer represented and promised to appellant that the track would and should be raised by the owners, or the city, so as not to interfere with the completion of the work upon the street. Upon these representations and promises appellant relied, and in such reliance entered into the contract. Appellant gravelled the street and completed the work up to the track, on either side, and placed in close proximity a sufficient amount of gravel to cover that portion occupied by the railroad track, which gravel could have been spread in one hour's time. He then demanded of the city, its council and engineer that the track should be removed or raised so that he might complete the work. This they neglected and refused, and ordered him to cover the track with the gravel. When he was proceeding to do this, he was enjoined by the circuit court at the suit of the mill company.

After this the city refused to permit appellant to spread the gravel on the portion of the street so occupied by the railroad track.

Two branches of Pogue's run crossed Tennessee street within the limits of the improvement. At the time the contract was made, and during the progress of the work, there was an ordinance in force which made it unlawful to in any way obstruct the stream or place material of any kind in its channel. The contract was entered into with reference to this ordinance, which was known to the contracting parties. Before, and at the time the contract was entered into, the common council and officers of the city represented to appellant that these branches of Pogue's run should and would be bridged by the city, so that the contract might be completed within the time limited.

Appellant proceeded with the work, and under the order of the city engineer he delivered a large and sufficient amount of earth and gravel along and upon the banks of both branches

of the stream, to complete the improvement up to the bridges. Nothing remained but to pack the earth against the abutments of the bridges, and place the gravel, which would have taken but a few hours, by the working force appellant then had. The work that was then done was done to the satisfaction of the engineer, and all was done that it was possible to do until the removal or raising of the railroad track and the building of the bridge abutments. These the city neglected and refused, and still refuses to build. At this point the city, through its common council, served a notice upon appellant to suspend further work. After this appellant demanded of the engineer, the city, and its common council, that the proper measurements, estimates and assessments should be made. That was refused. Afterwards, and on the 20th day of September, 1866, Pogue's run became so swollen that the waters overflowed its banks and washed away the earth and gravel placed thereon, and tore and washed away portions of the graded and gravelled street adjoining, causing a loss to appellant of $2,400, which would not have occurred had the bridges been built as promised by the city.

Before this flood the common council made a partial estimate in favor of appellant, amounting to $720.40, which he collected.

In December, 1866, the engineer made and submitted to the common council a report which was adopted, and which the defendants claimed, and now claim, was a final estimate. Appellant claimed, and still claims, that the estimate was incomplete, erroneous and false, in six particulars, as follows:

*First.* It contained no estimate on account of 1,744 cubic yards of grading by excavation, which had been done by him, and which constituted a part of the improvement under the contract.

*Second.* It contained no estimate or account of, and gave him no credit for, that portion, to wit, 870 cubic yards of grading; 600 cubic yards of gravelling; 630 cubic yards of

earth, not spread, and 250 cubic yards of gravel, not spread, which had previously been carried away by the flood.

*Third.* It erroneously and falsely stated that the entire grading by embankment done by appellant was only 2,307.4 cubic yards, when, in truth and fact, the same was 10,502.8 cubic yards.

*Fourth.* It erroneously and falsely stated that the entire gravelling done was but 2,070.2 cubic yards, when, in truth and in fact, the same was 2,221.3 cubic yards.

*Fifth.* The pretended quantities of the work and materials set forth in the pretended estimate were not ascertained by actual measurement, but by erroneous calculations from the supposed or pretended notes of a former engineer.

*Sixth.* It erroneously and falsely states that the total value of said work and materials was $4,928.12, when, in truth and fact, the value of the same was $12,127.42.

Appellant, claiming and asserting that the estimate was but a partial estimate, subsequently received payment of the amount, less $725.40, which he had previously received upon the first partial estimate, and less the sum of $725.42, which the city still retains.

It is further averred that the common council, well knowing that the estimate was imperfect, incomplete and false in the particulars mentioned, ordered a new and full estimate to be made. Acting under this order, the engineer, in September, 1869, made and submitted another estimate, which was adopted by the common council, and which the engineer, the city, and common council pretended and claimed, and still claim, was a full and complete estimate of all the work done and materials furnished upon all the crossings of streets and alleys included within the limits of the improvement. It is claimed that this estimate is incomplete, imperfect, erroneous and false, in five particulars stated. These are much the same as those above stated.

It is further averred that there is still due appellant for work done and materials furnished, exclusive of the crossings

of streets and alleys, $5,387.03; and for work done and materials furnished upon said crossings, $1,812.97, with interest.

Appellant has often demanded of the defendants that the work be measured, that a full, complete and final estimate be made and assessed, and that his liens for the price and value of the work, except at the street and alley crossings, be established against the owners of property abutting upon the street, and that the value of so much thereof as is occupied by said crossings be paid to him by the city in the manner provided in the contract, all of which has been refused.

Upon the filing of this complaint a summons was issued and served upon the mayor of the city, the president of the board of aldermen, and upon the mayor, as *ex officio* the presiding officer of the common council.

The mode of acquiring jurisdiction over the defendant in a proceeding of this character is not by the service of a summons, but by an alternative writ of mandate. Section 1170, R. S. 1881; *Potts* v. *State, ex rel.*, 75 Ind. 336. The board of aldermen and the common council did not appear, nor was any kind of default taken or attempted against them. As to them no action at all was taken. It is clear, therefore, that they are not before the court, so that a direct judgment may be rendered against them, and that the case must be disposed of as though they were not named as defendants. The city and the engineer appeared, and separately demurred to the complaint for want of sufficient facts. This appearance was a waiver of the alternative writ as to them. Having thus appeared, they might test the sufficiency of the complaint or application by demurrer. *Pfister* v. *State, ex rel.*, 82 Ind. 382; *Gill* v. *State, ex rel.*, 72 Ind. 266.

The demurrers were sustained by the court below, appellant excepted, and assigns the ruling as error. Since the appeal has been pending here, the engineer, Pattison, has died; his death has been suggested and noted upon the record. Whether or not his successor in office might have been substituted, we need not decide, as there has been no effort to have it done.

The case must, therefore, be disposed of as between the appellant and the city alone. Preliminary to a consideration of the questions raised by the demurrer, it is insisted by counsel for appellee that there is no judgment from which an appeal can be taken.

The case was assigned to room 2 of the superior court. The demurrer was there sustained, and, appellant declining to amend, judgment was rendered against him. On appeal to the general term, two of the judges, having been engaged as counsel prior to their election, declined to act, and the judgment of the special term was affirmed by the single judge, who decided the case at special term. From this judgment the appeal is taken here.

The contention is that appellant should have had the case transferred to the circuit court before it reached the general term, under section 18, 2 R. S. 1876, p. 26. There is nothing in the record to show that appellant knew of the disqualification of the judges until they declined to act. What should be the proper practice in such a case under the above section, or whether or not it has been superseded by section 1362, R. S. 1881, we need not now decide.

Appellee did not object to the one judge acting and affirming the judgment at special term, and we think it is too late for it to object for the first time in this court; and, besides, there is no motion here to dismiss the appeal, nor is there any assignment of cross errors. The question sought to be raised is not presented by, nor is it involved in, the ruling upon the demurrer, which is the only assignment in this court.

It is contended further by counsel for appellee that this action can not be maintained against the city of Indianapolis; that, if maintainable at all, the action should have been against the members of the common council and the engineer individually, in their official capacity.

The statute provides that writs of mandate may be issued to any inferior tribunal, corporation, board or person, to compel the performance of any act which the law specially en-

joins, or a duty resulting from an office, trust or station. Section 1168, R. S. 1881. That the statute authorizes the writ to issue to a corporation there can be no doubt. Does the term "corporation," as used in the statute, include such corporations as cities. There has been no direct ruling by this court upon the question as here presented. Numerous cases for mandate against corporations, some of them cities, are reported in the books. It is not apparent that there was any controversy as to the right to prosecute them against the corporations. The fact that the court made no question is a tacit acquiescence in that right. The case of *City of Indianapolis* v. *Patterson*, 33 Ind. 157, was an application for a mandate to compel the correction of an estimate and assessment for a street improvement, and the issuing of a precept. The case of *City of Madison* v. *Korbly*, 32 Ind. 74, was an application for a mandate against the city to reinstate a city attorney who had been removed by the common council. The case was prosecuted to the end against the city alone. See, also, *Indianapolis, etc., R. R. Co.* v. *State, ex rel.*, 37 Ind. 489; *Board, etc.*, v. *State, ex rel.*, 15 Ind. 250. *Board, etc.*, v. *State, ex rel.*, 61 Ind. 75. This case was prosecuted against the board as a corporation. So treating the board, WORDEN, J., speaking for the court, held that, in analogy to the statute providing that process against a corporation may be served upon the president, presiding officer, etc., the service of the alternative writ upon the president was sufficient.

The early doctrine of some of the English courts seems to have been that the *mandamus* should be directed to the body politic, by its corporate name, and that if not so directed, but to the mayor and aldermen of the municipality, it might be quashed. High Ex. Legal Rem., section 442, and cases cited; Grant Corp. 355, note *a*.

The doctrine as established in this country seems to be that the action may be maintained against both the municipal corporation and the common council, or other officers whose duty it is to act, or against either of them, to enforce the perform-

ance of a duty incumbent upon the corporation. The action, when brought against the common council, is properly brought against it as a body, and not against the members individually.

The case of *Commissioners* v. *Sellew*, 99 U. S. 624, was an action for *mandamus* against the board of commissioners as a corporation. The peremptory writ was ordered against the corporation alone. The court said : "As the corporation can only act through its agents, the courts will operate upon the agents through the corporation. When a copy of the writ which has been ordered is served upon the clerk of the board, it will be served on the corporation, and be equivalent to a command that the persons who may be members of the board shall do what is required. If the members fail to obey, those guilty of disobedience may, if necessary, be punished for the contempt. * * * Those who are members of the board at the time when the board is required to act will be the parties to whom the court will look for the performance of what is demanded."

In the case of *Pegram* v. *Comm'rs*, 65 N. C. 114, which was for a writ of mandamus, it was said : " The county * * is a municipal corporation, and 'its power can only be exercised by the board of commissioners,' etc. 'All acts or proceedings by or against a county in its corporate capacity, shall be in the name of the board of commissioners.' (Acts 1868, ch. 20.) As all the corporate functions of a county are thus to be exercised, the board of commissioners must necessarily have a perpetual existence, continued by members who succeed each other, and the body remains the same notwithstanding a change in the individuals who compose it.

" The county is a public corporation, and has certain public duties to perform, and, according to the provision of the statute above referred to, the writ of *mandamus* must be directed to the board of commissioners, who exercise the corporate powers, * * and the individuals who compose the board at the time of service, must obey the writ." See, also, *People, ex rel.*, v. *City of Bloomington*, 63 Ill. 207 ; *Maddox* v. *Graham*, 2 Met. (Ky.)

Wren *v.* The City of Indianapolis.

56; *State, ex rel.,* v. *City of Madison,* 15 Wis. 33. In this case it was held that the peremptory writ may be directed to, and enforced against, the mayor and common council of the city generally, notwithstanding that the mayor and some of the aldermen may have gone out of office, and others taken their places, subsequent to the service of the alternative writ. *State, ex rel.,* v. *City of Keokuk,* 9 Iowa, 438; *City of Ottawa* v. *People,* 48 Ill. 233. This was an action against the city alone for a writ of *mandamus,* and was so prosecuted to the end. *State, ex rel.,* v. *City of Milwaukee,* 25 Wis. 122; *Parrott* v. *City of Bridgeport,* 44 Conn. 180 (26 Am. R. 439); *County Comm'rs* v. *Bryson,* 13 Fla. 281; Angell & Ames Corp., section 697. Mr. Dillon, in his work on municipal corporations, after speaking of the difference between our municipal corporations and those of England, says: "These circumstances influence the direction of a writ, for, as we shall presently see, the writ, in all cases where the duty to be performed rests upon the council, may be directed to the corporation by its corporate name, or to the officers composing the council in their official capacity." Dillon Munic. Corp. (3d ed.) sections 871, 872. To the same effect is the ruling in the case of *Village of Glencoe* v. *People,* 78 Ill. 382. The court in that case said: "The object of the writ is to coerce the performance of a duty which is claimed to be obligatory on the council as a body, without regard to the individuals who compose that body. There might, therefore, be an entire change in the members composing the council, without in anywise affecting the proceeding. The duty sought to be enforced, although to be discharged by one branch of the corporate body, is, nevertheless, a corporate duty, and the proceeding might, with equal propriety, have been against the corporation, the ultimate result being precisely the same. * * * The peremptory writ, however, * * * should be served upon those composing the council at the time of the service."

Our statute provided, and still provides, that for work done

under a contract, such as that described in the complaint, the common council may make estimates, which shall become a lien upon the ground upon which they are assessed.    Section 70, 1 R. S. 1876, p. 304; section 3164, R. S. 1881.

This imposes an imperative corporate duty.    The word *may* is the equivalent of *shall.*    It is just as much the duty of the city to make the estimate as to issue the precept.  *City of Greencastle* v. *Allen,* 43 Ind. 347 ; *Chapin* v. *Osborn,* 29 Ind. 99.    To hold otherwise would be to hold that the contractor might be left remediless, as he could recover neither against the city nor property-owners for the improvement adjacent to their property.    Section 3163, R. S. 1881; section 69, 1 R. S. 1876, p. 303; *City of Greencastle* v. *Allen, supra.* The duty being thus a corporate duty, the action may be against the corporation and the writ directed to it.    It should be served, however, upon those officers of the corporation whose special duty it is to act, in this instance, the common council and board of aldermen.    It has been said in some of the cases, that the writ may issue to the civil engineer to compel him to report an estimate to the common council.    This may be so in a proper case, but the engineer is not in all cases a necessary party.    The law makes it his duty to prepare estimates for work done under contracts with the city, when so directed by the common council.    Section 27, 1 R. S. 1876, p. 278; section 3073, R. S. 1881.    In that regard the engineer is the agent of the common council.    As to the manner and the basis upon which an estimate is to be made, he is subject to the orders of the common council, except as provided in section 3163, R. S. 1881.    For disobedience of such orders that body, doubtless, may deal with him.    It seems clear to us that until after such direction by the common council, and a disobedience by the engineer, there is no case calling for the intervention of the courts.    In the case before us, there is nothing to show that the engineer, in any substantial manner, declined or neglected to obey the instructions of the common council. The fault, if any, has not been

with him, but with his superior, the common council. Hence he is not a necessary party to this action.

It is further contended by appellee that the complaint does not show that a valid ordinance was passed for the making of the improvement, because it does not thereby affirmatively appear that it was passed in pursuance of a petition from the property owners. The law provides that upon the presentation of such a petition, the common council may pass such ordinances. It also provides that such ordinances may be passed by a two-thirds vote of the common council without such a petition. Section 68, 1 G. & H. 233; section 70, 1 R. S. 1876, p. 304; section 3164, R. S. 1881; *City of Indianapolis* v. *Imberry*, 17 Ind. 175; *City of Indianapolis* v. *Mansur*, 15 Ind. 112; *Moberry* v. *City of Jeffersonville*, 38 Ind. 198; *Ray* v. *City of Jeffersonville*, 90 Ind. 567.

In the case before us, the averment in the complaint is that the ordinance was passed by the unanimous vote of the common council.

It is contended still further, that the complaint is insufficient because it does not affirmatively appear therein that an advertisement for proposals was made before the letting and execution of the contract.

The law requires such an advertisement, but we think that in this proceeding the city should not be allowed to make that question. Whether or not the property owners may make it, when appellant seeks to enforce an assessment, is a question not before us. Whether they can or not, they may not. Appellant's right to an estimate should not be defeated by assuming that they will; it should rather be presumed that they will pay upon an estimate being made, fixing the amounts.

It is still further insisted by appellee's counsel, that the complaint is insufficient because the ordinance for the improvement does not fix the grade of the street. The ordinance and contract fix the width of the grade. In other particulars they provide for the grading to be done in accordance with stakes to be set by the city civil engineer. Whatever

might be the force of this objection in other and different pro-
ceedings, we think it is not sufficient to defeat appellant's right
to the estimate and assessment against the property owners.
As before stated, if a proper estimate shall be made, the prop-
erty owners may pay without question.   It may be, too, that
the grade of this street, as well as all others, was fixed by a
prior and general ordinance, with reference to which this may
have been passed and the contract made.   However this may
be, and whether or not the property owners may urge this ob-
jection in resistance to the collection of the estimates, the
city is not in a position to urge its own neglect as against the
demand for an estimate.   Having entered into the contract
with appellant, under which he, in good faith, expended his
time and money, the city should not be allowed now to refuse
the means by which he may be enabled to collect from the
property owners.  *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62,
and cases cited; *Township* v. *Talcott,* 19 Wall. 666; *Argenti*
v. *City of SanFrancisco,* 16 Cal. 255.

Nor can the city, to avoid making the estimate, be heard to
urge that the work was not entirely finished, in strict accord-
ance with the contract.  Whatever was lacking in this regard
is shown to have been entirely by the fault of the city.
Surely the city should not be heard now to urge its own
wrong, in avoidance of a duty enjoined by the statute, and
which is legally and equitably due to appellant.   The little
to be done to complete the work in accordance with the con-
tract was not done, because of the wrongful neglects and in-
terposition of the city.   Appellant is not thus to be defeated
in the collection of the amount due for the work done.   For
that he is clearly entitled to an estimate and payment.   For
the materials furnished under the contract, which, by the
wrong of the city, could not be put in place; for that portion
of the materials so furnished, which, by the fault of the city,
was washed away by the flood, and for the amount due for
the grading and gravelling of cross streets, appellant must
look to the city.   For these amounts, therefore, he is not en-

titled to an estimate against the property owners. Neither the law, the ordinance, nor the contract provides for an estimate against the city. Whatever rights appellant may have against the city, he may enforce as well without as with an estimate. He can not, therefore, maintain this action to enforce such an estimate.

As to the amounts to be collected from the property owners, the case is different. As to these, he has no remedy without an estimate. For this reason the courts will enforce the making of such an estimate by *mandamus.*

As shown by the complaint, there is a disagreement as to the grading. It seems to have been claimed on behalf of the city, that appellant is entitled to an estimate and pay for the grading which consisted in fills or embankments, but not for that which was in the way of excavations or cuts. The contract provides generally that for the grading appellant shall receive seventy cents per cubic yard. This clearly includes grading by excavation as well as by filling. Appellant is entitled to an estimate for the full amount of the grading. Whatever may have been the custom of the city in measuring other similar work, under other contracts, it can not control the plain terms of this. Appellant is not only entitled to an estimate, but he is entitled to have it made upon the basis of, and in accordance with, the terms of his contract, so that he may be enabled to collect the full amount due him under the contract. The contract fixes the rights of the parties. The making of an estimate for the work done under it is a ministerial act; it is neither judicial nor discretionary. When the rights and duties of the parties are fixed, as they are by the law and the contract in this case, *mandamus* will lie not only to compel the corporation to act, but to act in such a way as will secure to the other party his rights. If the courts did not possess this power, the contractor would be at the mercy of the city. He has no remedy except by *mandamus.* *People* v. *Judges,* 20 Wend. 658.

The duty of the city being fixed under the law and the

contract, the case comes clearly within the statute which provides that *mandamus* will lie to compel the performance of an act which the law specially enjoins, etc. *Gardner* v. *Haney*, 86 Ind. 17.

. That the city and its officers may claim that the estimates already made are final, can not change the case. The facts stated in the complaint show that they are not, in a legal sense, final, because, as yet, appellant has not had an estimate for the full amount of the work done under the contract. To such an estimate he is entitled. There have been no laches on his part that will defeat this right, nor is it barred by any provision of the statute of limitations. For the reasons stated we hold that the complaint states a cause of action, and that the court below erred in sustaining the demurrer. The judgment is, therefore, reversed, with costs.

ELLIOTT, J., did not participate in the decision of this case.

