## CLARK v. WOLF *et al.*

1. **Former Adjudication:** EFFECT ON CITIZEN OF JUDGMENT AGAINST COUNTY: ESTOPPEL. A judgment against a county, or its legal representatives, in a matter of general interest to all the people thereof, as one respecting the levy and collection of a tax, is binding, not only on the official representatives of the county named in the proceeding as defendants, but upon all the citizens thereof, though not made parties defendant by name.

2. —— JURISDICTION: STATE AND FEDERAL COURTS. The holding, in *Ex parte Holman et al*, 28 Iowa, 88, that where a federal court for a state has decided that certain prior proceedings of a state court pleaded as a defense and as depriving the federal court of jurisdiction, are ineffectual for that purpose, such decision is conclusive, and cannot be collaterally impeached, followed in the present case. BECK, J., dissenting on the same grounds as in the case mentioned.

*Appeal from General Term, Eighth District (Johnson County).*

## MONDAY, JULY 25.

PETITION for writ of *certiorari.* The plaintiff avers that he is the owner in fee of certain real property in Iowa City, Johnson county, which has been listed and assessed for taxation ; that the defendants, Lewis R. Wole and others, constitute the board of supervisors of said county, and the defendant, James Cavanaugh, is auditor of said county and clerk of said board. That on the first day of September, 1853, the then judge of Johnson county, assuming to act under authority of a vote of a part of the people of the county, but in truth without any authority of law, issued so-called bonds of Johnson county, with coupons attached, to the amount of fifty thousand dollars, as subscription to stock of the M. & M. R. R. Co., a railroad corporation of said state ; that on December

Clark v. Wolf.

first, 1853, the said county judge, in like manner, issued other fifty thousand dollars to the Lyons, Iowa, R. R. Co., a similar private railroad corporation of this state; that plaintiff did not vote at said election.

That afterward certain judgments are alleged to have been recovered on said bonds or coupons by persons and for amounts unknown to plaintiff, and in suits to which he was not a party nor entitled to defend; that at the September session, 1869, said board, professing to be under obligations to pay said bonds or judgments, levied a tax to pay the same of two per cent on the assessed value of all the property in the county. in addition to the taxes authorized by law. The plaintiff further avers, that said subscription was unauthorized and in violation of law, and the bonds were void, and the attempt at taxation illegal and unconstitutional, etc.; that on the third day of November, 1864, in an action brought by C. H. Berryhill, for himself and other citizens, and tax payers of said county, against the board of supervisors of said county, a decree was rendered by this court whereby the said board were forbidden and perpetually enjoined from levying any tax whatever for the payment of said bonds or coupons; that said judgment has in no manner been set aside or annulled or appealed from. The plaintiff asks for a writ of *certiorari;* that the levy of said two per cent tax be set aside as illegal and void and for other proper relief, etc.

The defendants filed their joint answer, wherein they admit they are the board of supervisors and auditor, and that the tax was levied as stated; they aver want of knowledge of the plaintiff's ownership of property as claimed by him; they deny the power of the court to pass upon the legality of the levy; that the defendants were not exercising judicial functions, nor is the writ of certiorari, applied for, authorized by law; they aver that the

Clark v. Wolf.

circuit court of the United States for the district of Iowa, has full and exclusive jurisdiction of the parties to and subject-matter of this action, and all things pertaining to the collection of said tax and judgments and the process therefor, and this court has no jurisdiction; they also state the several judgments, their dates and amounts, that they are still due and unpaid, and were regularly recovered against said county in the circuit court of the United States for the district of Iowa, on full defense as to the illegality and invalidity of said bonds; that after said judgments were recovored, executions were issued and returned "no property;" that afterward an alternative writ of mandamus was issued requiring defendants to levy a tax to pay said judgments or show cause; that defendants did show cause, and, among other things, set up the very illegality and invalidity of the bonds as averred by plaintiff in this action, and the decree of the district court of Johnson county in the case of Berryhill for himself and other tax payers, etc., against the board; that said court adjudged the answer insufficient, and that the decree and injunction was void and of no effect, and made the order of mandamus peremptory; that said order and judgment are still in force and unreversed, and the tax complained of was levied pursuant thereto.

And the defendants further state, that the proposition voted upon by the people for the issuance of said bonds, contained a provision for the levy of the tax for their payment; that this plaintiff was a citizen of the county at the time the several judgments on the bonds were rendered, and orders and judgments of mandamus were issued, and ever since 1855; that the decree or judgment of injunction in the case of Berryhill for himself and others against the board was and is void, for the reason that no owner or holder of said bonds was made a party to said proceeding, and the judgment was obtained by

agreement and collusion; that said judgment of injunction was void for the further reason that this court had no jurisdiction to limit or abridge the right of the United States courts to collect its judgments and compel payment by the usual legal process in such cases; that by reason of the foregoing matters the plaintiff, the taxpayers and the county are estopped from further litigating the same; that none of the several judgment creditors, having judgments upon said bonds, are made parties to this suit; that they are the real parties in interest, and necessary parties hereto, and should be made defendants; that said board have no further control over the levy, nor can the plaintiff test its validity in this suit.

In a further answer, the defendants admit the issuance of the bonds; deny their illegality; admit the levy of the tax; deny that it is illegal; admit the rendition of the judgment of injunction at the suit of Berryhill for himself and other tax payers against the board, as stated by plaintiff, but deny that the bond judgment creditors are bound thereby, not being parties thereto.

Afterward, the parties by stipulation agree that the plaintiff owns the property claimed by him; that he was not a voter at the time the bonds were issued; that the proceedings in the United States circuit court were as stated by defendant, except that plaintiff was not a party by name thereto, but the same was against the county and the officers thereof. On these pleadings and admissions the district court reserved its decision for the general term, and thereon the general term denied the application for the writ of *certiorari*. The plaintiff appeals.

*Rush Clark pro se.*

*Fairall & Boal* and *Edmonds & Ransom* for the appellees.

Clark v. Wolf.

WRIGHT, J.—In view of the prior decisions of this court, there remains, in my opinion, but one question for our determination, and that is, whether plaintiff was barred of his rights as a judgment plaintiff by proceedings on the part of third persons against the judgment defendants, in another tribunal, and to which proceedings he was not a party by name. It seems to me, that as to all other matters and questions we are concluded by the expressed adjudication of the federal courts in these "county or railroad bond cases," as well as by long settled rules recognized by other courts, and by none more clearly than by this, in the recent case of *Ex parte Holman*, 28 Iowa, 88. What, then, is the question before us? I answer, just this: Were the rights of plaintiff, under the Berryhill judgment, cut off by the order or judgment of the United States circuit court for Iowa, ordering the recovery and levy of the tax, to which the county and its officers were made parties and of which they had notice, but of which the plaintiff had no notice and to which he was not a party, otherwise than as a citizen of the county and as he might be bound in virtue of such relation? I confess, that, at first—upon the argument—I was impressed with the plausibility at least, if not entire soundness, of plaintiff's position. For the general proposition was incontrovertible, that a judgment *plaintiff* shall not be concluded by proceedings on the part of third persons against the *judgment defendant*, in relation to said judgment, to which plaintiff was not a party. And hence the process of reasoning seemed to be plain enough, as follows: Plaintiff was a party to the Berryhill judgment; the county and its officers were defendants; their interests were hostile and adverse; a proceeding against the county and its officers, adjudging that judgment void or of no validity, as against a proceeding by the bond-holders for the levy of a tax, certainly ought not to bind plaintiff;

for, if so, then it would occur, in the face of the rule just stated, that as plaintiff he would be concluded by the action of third persons against defendants, whose interests and relations to the controversy were adverse to his. Further reflection, however, led me to distrust the correctness of the first impression, and I am now forced to believe that plaintiff is not in a position to claim the benefit of the rule stated.

I concede—indeed I do not understand it to be seriously controverted—that plaintiff is entitled to the rights and benefits of the Berryhill injunction. I think it is as well settled that plaintiff, *as a citizen* of the county, is bound by a judgment against the county in a court having jurisdiction, or against the board of supervisors, they being the legal representatives or agents of the county. If this is so, then, if by the action of the federal court against the county and its officers the *citizens* of the county (including plaintiff) are concluded, I confess that I do not see what *plaintiff's rights*, as a party to the Berryhill judgment, are worth. In other words, the difference in law, and for any purpose either practical or beneficial between plaintiff in his capacity as a *citizen* and as a *party* to the injunction judgment, I cannot appreciate. He has no right and can claim none to the Berryhill decree, except in virtue of his capacity as a *citizen*. For only in this way, and through this channel, is he a party to it. He is not so by name, but as it was brought by Berryhill for himself and others, citizens of the county, and the question was one of common interest, all the *citizens* are treated and accepted, in theory, as parties, and standing as Berryhill does. Now, when these same *citizens* are concluded, by a proceeding against the county the municipality and its officers, what rights have they left under their judgment ? If parties to the second or federal judgment or adjudication, where is the warrant for saying

that they are concluded as to certain matters, or in certain capacities, and not as to or in others ?    The effect of the adjudication against the county cannot, in my opinion, be thus divided up.    Let us look at the matter a little more at length, in the light of reason and principle.    Had the county the power to contract the debt upon which the federal judgment was rendered ?    I say, as I have from my place here repeatedly for the last twelve years, no ; none under the statute, none inherently.    This we know has been held over and over again by this court.

But suppose a tribunal, having jurisdiction, determines in a case before it that the bonds are valid, and renders judgment accordingly ; that from this judgment there is no appeal ; and that it remains in full force, in no manner disturbed or set aside.    Suppose, further, that the county should obtain an injunction, and have it made perpetual, against the collection of these bonds.    In this action, in the other jurisdiction, this injunction proceeding is pleaded in bar, but is expressly held to be no defense, and this order or judgment remains undisturbed.    Now, a majority of this court, in the case of *Ex parte Holman, supra*, held, under just these facts, that the supervisors could not resist a process commanding the levy of a tax to pay such judgment.    It will be observed that then, as now, I at least placed stress upon the fact that *the injunction proceedings were pleaded and held not to be a bar*.    I have not yet been called upon to determine the effect of such judgment as against an injunction not pleaded.    Nor, further, am I conscious of ever having held anything which could be construed as abridging in any manner the power of the state courts to exercise their rightful and constitutional jurisdiction, both to render and enforce their own judgments.    The rule is mutual and reciprocal, that, while the state courts may not interfere with the process of the fede-

ral courts, neither shall the federal courts with those of the state.

The power of each, however, to enforce its own is in no manner disturbed by the rule above recognized. And yet it by no means follows, in my opinion, as suggested by counsel, that the federal process is so omnipotent and all protecting that the officer thereunder can, without interference by the state, take the property of A., when the writ was against the property of B. Nor does it follow, either, that when property has come to A. by the judgment of a state court, he can be divested of that property by the judgment of the federal court to which he was not a party. The protection offered to the party holding adverse to the federal process in no just or proper sense interferes with the jurisdiction of the federal courts. In the case referred to, *Ex parte Holman*, *supra*, the holding was upon the plain ground that the second adjudication concluded the county as to the effect of the injunction upon the rights of the creditors, and that its correctness could not be thus inquired into collaterally. What better, then, is plaintiff's situation under the same or similar facts? It is said that the questions between the creditor and the corporation (municipal), as the case now stands, is one of legal liability, but that as between the county (corporation) or its officers and the citizen, it is one touching the power and extent of taxation under legislative grant. I say, if this be the argument, then it would be equally true without the aid of the injunction proceeding. For this assumes that the citizen is not bound by a recovery against the county, but that when his property is seized to pay taxes he may question the power of the county to contract the debt upon which the recovery was had; and this, it will be seen, is directly in the face of a most important proposition above stated, to wit: that the judgment in the circuit

court of the United States against the supervisors, as plaintiff's agents (treating now of his rights as a *citizen* only), bound him. And as to the correctness of this there can be but little doubt. It must be, in the absence of fraud or collusion or the like, on the part of the municipal officers, that the legal liability of the county, being once fixed by a valid judgment, the citizen, no more than the county, can afterward resist the collection of said judgment upon the ground of the want of power to contract the debt. That stage in the controversy is past. If the officers shall attempt to make a levy not warranted by law (for instance, a greater per cent than the law allows), or to collect the same in an illegal manner, or the like, these are questions between the citizen and the corporation, and do not touch either the validity of the debt or the correctness of the judgment which is intended to be satisfied. The distinction is, to my mind, very clear. Plaintiff's case is not within that last supposed. And here, let it be remembered that this argument is predicated upon the *binding force* of the recovery *against the county*, in the federal court. The liability of the county and the obligation to meet the same is, in such a view, as well *settled* as though the original debt was of the highest morality, founded upon the most undoubted consideration, and contracted under the clearest grant of legislative power.

It is conceded that plaintiff's property cannot be *levied upon* to pay this or any other debt of the county (Rev. § 3274), but he is liable like every other citizen to pay his taxes to carry on the affairs of the county and meet its burdens. The debt in controversy, it has been adjudged, is one of these burdens. If it had not been so adjudged, plaintiff would occupy a very different position. But it has, and there is the great difficulty in plaintiff's case. This course of reasoning, then, brings us back,

necessarily as it seems to me, to plaintiff's rights under the *judgment* in the injunction suit, after the adjudication against the county holding it insufficient in the circuit court of the United States. And here let it be conceded, as claimed, that the levy is made in defiance of the injunction of a court of competent jurisdiction. But what else is true? Just this: that another tribunal having the power to do so, as against the county, as we have seen, in a case before it involving the force, effect and conclusiveness of that injunction, and in which it was pleaded, has held that the levy should and must be made; thus removing it out of the way. Where does plaintiff stand then? Just here: that as a *party deriving rights under this judgment*, he was not a party to or bound by this order, declaring the injunction no impediment, however much bound as a citizen. It is granted that a judgment against A., as administrator of the estate of B. does not conclude A. as an individual; nor would a recovery against him, *as an individual*, conclude the estate of his ward, for whom he was acting as guardian. But a judgment in the first case, if *bona fide*, would bind the property of the estate and the heirs interested therein, and so it would his ward if the action was against him as guardian. So, too, as we have seen, is the citizen bound by a judgment against the county. This was as true of Berryhill as of any other citizen. But suppose he had been made a party by name to the proceedings for mandamus, being joined with the county, could he now say I was joined to conclude me as a *citizen*, but not as a party to the judgment which I obtained, enjoining the collection of these bonds? And would the answer to the proposition be any different, whether he did or did not set up and rely upon the judgment? If he did, and it was held insufficient, he is concluded. If he did not, he is equally so, for he had his day in court, and it was his duty to

make known his defense, and failing to do so, he shall not afterward be heard. Now, if the county, his representative, his agent, in the same manner is concluded, is not he also? And if he then is the plaintiff, who claims under the same judgment, and as effectually as though a party by name to the proceedings in the federal court. I view the case precisely as though the plaintiff was a party to the proceeding in the federal court against the county. And this, because the county, there being no suggestion of fraud or collusion between the judgment creditors and the county, must be treated as plaintiff's agent or representative, and whatever binds the county binds plaintiff as to any and all defenses which he then held, and failed in person or by his representative to set up.

My conclusion, therefore is, that the judgment of the court below is in harmony with well-settled principles, and should be affirmed. This conclusion, it is understood, has the approval of the chief justice and Mr. Justice Williams.

Affirmed.

BECK, J. (dissenting).—I cannot concur in the opinion just read. As I understand the record, the injunction proceeding was instituted before the actions upon the coupons were commenced in the federal court. The subject-matter involved in the injunction suit and the actions upon the coupons is the same, and of it the federal and state courts may have concurrent jurisdiction. But the state court having first acquired jurisdiction, the federal court was excluded therefrom. The judgments of the federal court upon the coupons, being without jurisdiction, are void; and all process to enforce them, or ancillary proceedings in and of them, are void.

It is evident that a void judgment will not support process of execution, nor any ancillary proceeding. The

mandamus proceeding being based upon a void judgment —upon no judgment,—is void, and the peremptory writ should not be obeyed. The tax, therefore, should not have been levied. Having been levied without authority, plaintiff as a tax payer is entitled to relief from this court, by a proper order in this proceeding setting aside the levy of the tax.

I do not propose now to support these views by argument. I refer to the opinion of this court in *McClure* v. *Owen*, 26 Iowa, 243, and my dissenting opinion in *Ex parte Holman*, 28 Iowa, 88, which I think, present arguments and authorities that have not been and never can be fairly answered.

If the supreme court of the state of Iowa, in a case where it indisputably possesses jurisdiction, construes the constitution and laws of the state, I know of no principle of law which will permit the federal court, in a subsequent case involving the identical subject-matter, to disregard and annul the prior decision of the state court, and coerce the people and their officers to do that which the constitution and laws of the state prohibit. This is the very thing that the federal court is now doing in these cases to enforce the payment of municipal railroad bonds, and their power so to do is admitted by the majority of this court. That it may be done rightfully, is contrary to both principle and precedent. That it in fact is done, most clearly establishes that a judicial revolution in our government, whereby the federal courts will become the final interpreters of state constitutions and state laws is imminent, if not accomplished. The effects of this revolution, while its only fruits may be the enforcement of the payment of a few millions of dollars of municipal railroad bonds, are of little moment. But "revolutions never go backward," and time will demonstrate, that, unless the progress of this judicial revolution

be stayed by proper congressional action, the states will soon cease to control their own internal affairs.

My views upon the questions involved in this case are fully expressed, and as clearly as I am capable of doing, in *Ex parte Holman, supra.* The arguments and reasoning I there adopt are applicable to this case, and lead me to the conclusion above expressed. It would prove unprofitable to repeat them here.

In my opinion, the judgment of the district court should be

Reversed.