## JUNE TERM, A. D. 1888.

| 24 | 209 |
| a41 | 445 |
| 41 | 657 |

| 24 | 209 |
| e47 | 174 |
| 47 | 348 |

| 24 | 209 |
| 51 | 453 |
| 51 | 459 |

| 24 | 209 |
| f52 | 580 |

JOHN SAULS ET AL., APPELLANTS, VS. DENNIS FREEMAN, ET AL., COUNTY COMMISSIONERS, AND H. J. FAULKNER, CLERK. OF THE CIRCUIT COURT OF VOLUSIA COUNTY, APPELLEES.

1. The *interest* which under the statute of 1862, sec. 28, p. 337, McC's. Digest, disqualifies a judge from sitting in a cause is a property interest in the action or in its result. The interest which he may have in common with other citizens in a public matter does not disqualify him.

2. The fact that a Circuit Judge signed, with other registered voters of the county, a petition addressed to the County Commissioners asking for a change of the county site, did not disqualify him, on the ground of interest, to sit in a mandamus proceeding instituted by some of the petitioners to compel the Commissioners to call an election on the question of changing the county site, as it is made their duty to do by the statute.

3. A judgment on the merits is an absolute bar to a subsequent action on the same claim, and concludes the parties and their privies, not only as to every matter which was offered and received to sustain or defeat the claim, but also as to any other admissible matter that might have been offered for either purpose. The admission by the pleadings of material facts does not constitute an exception to the rule.

15

4. A judgment against a county, or its legal representatives as such, in a matter of general interest to all the people thereof, is, in the absence of fraud between such officials and the opposing parties, binding upon all the citizens of the county.

5. A judgment in mandamus commanding the County Commissioners to call an election on the question of changing the location of the county site is a bar to a bill in equity instituted by registered voters, other than those who were relators in the mandamus, to restrain the Commissioners from moving the county records to the place chosen as the county site at such election, the matters alleged in the bill being such as could have been set up by the Commissioners in the mandamus proceeding.

6. Where it is apparent on the face of a bill for an injunction that the complainants cannot be entitled to any relief, the bill may be dismissed at the hearing of the application for a preliminary injunction.

Appeal from the Circuit Court for Volusia county.

The opinion in this case was filed at the January term, 1888, but appellants filed a petition for a rehearing, which was held under consideration until the June term, 1888, when it was denied.

This is a bill in chancery, filed by John Sauls and J. H. Bodine, against the County Commissioners and the Clerk of the Circuit Court of Volusia county, praying an injunction against the removal of the public offices and records of the county from Enterprise to DeLand, as the county site of the county.

The allegations not set out in the opinion are, substantially, in so far as they need be stated, as follows :

That on February 7th, 1888, a petition purporting to contain the names of one-third of the registered voters of said county was presented to, or attempted to be presented to, the County Commissioners, asking them to order an elec-

tion for the change of location of the county site of the county. That the petition was not examined by the County Commissioners, but the matter was postponed till next meeting.

That on the 20th day of the same month, the commissioners, in obedience to a peremptory writ of mandamus issued by Judge Broome, of the Seventh Circuit, met and ordered an election.

That at the meeting at which the County Commissioners called the election, the petition was not before them, and they made no personal examination of the same, but relied upon a certificate of Faulkner, the Clerk of the Circuit Court, to the effect that he had made a careful examination and comparison of the signatures and names annexed to the petition praying for a change of location of the county site with the registration lists of the voters on file in his office, and found that the petition contained the names of eight hundred and twenty-five (825) registered voters of the county, and that the registration list contains the names of 2,272 voters; and that such "petition contains the names of more than one-third of the registered voters of said county, as appears of record in his office." This certificate is alleged to have been made by the clerk of his own motion, and that no order was made by the board for the clerk to examine the petition; that he examined it in the presence of the attorney of the city of DeLand, who presented the petition, with the certificate, to the commissioners, and such examination and comparison were not in the presence of the Board of Commissioners, or by its direction.

That no proper or legal examination of the petition was ever made by the commissioners. As apart of the bill, is annexed an affidavit of Dennis Freeman, Chairman of the Board of County Commissioners. It states that deponent was such chairman on the 7th day of February, 1888, and

that at the meeting of that day the petition was presented to the board, but that it was not examined by the board, nor did they compare any names thereon with the registration list of the said county, but the consideration of the petition was postponed until the next meeting, viz : the first Monday in March, 1888.

That at the subsequent meeting it was not exhibited or shown to or seen by the board, nor were such lists produced or exhibited to the board at any of the meetings thereof, but the board depended on the certificate of the Clerk of the Circuit Court as to such lists—and that they had no personal knowledge as to whether there were one-third of the voters legally registered in said county, on the petition.

That John R. Sauls, with W. R. Fitts, deputy clerk of the county, has compared the petition with the registration books in the office of the clerk, and finds that over one hundred and thirty (130) names, viz: 137—do not appear on the registration books, as he can find. A list of names are attached to the bill, marked Exhibit B. That he finds on the petition 156 petitioners, who registered at the election held in accordance with Article XIX—the Local Option article—and under chapter 3700, laws of 1887, which 156 names he declares are not legally registered voters, in that they did not take and subscribe the oath prescribed by the Constitution of this State, but another oath, viz: to "protect and defend the Constitution and and government of the United States and the Constitution and government of the State of Florida against all enemies, foreign and domestic," and to "bear true faith, loyalty and allegiance to the same, any ordinance or resolution of any State Convention or Legislature to the contrary notwithstanding." The names of those who registered at said election, and the dates of their registration, are attached to the bill. They registered in October and November, 1887.

The proceedings of the Commissioners canvassing the vote cast at the election, and ascertaining that DeLand was chosen to be the county site, are set out *in extenso*, but need not be detailed here.

That Ichabod Dougherty and E. M. Snow signed said petition twice.

That the County Commissioners are about to remove the county offices, records, furniture and property of the county to DeLand, and the Clerk is about to remove the records of his office from Enterprise to said city, &c., &c.

The other facts are stated in the opinion.

*Foster & Gunby* and *John W. Price* for Appellants.

*Hamlin & Stewart* and *C. P. & J. C. Cooper* for Appellees.

Mr. Justice Raney delivered the opinion of the court:

I. Judge Broome, of the Seventh Circuit, on the presentation of the bill to him on the 6th day of April of the present year, made an order enjoining, until the further order of the court, the defendants, appellees, from moving the county records from Enterprise, the old county site. Three days afterwards he dissolved the injunction and dismissed the bill. From the latter order complainants appealed to the June term. In view of the public interests involved and by consent of parties we consented to hear the case at the present term.

II. The first question to be disposed of is that of Judge Broome's legal qualification to entertain the mandamus proceedings set up in the bill. He, according to the allegations of the bill, signed the petition to the County Commissioners for an election on the question of changing the location of the county site. It is claimed that from the fact of

being one of such petitioners for an election, he was so interested as to disqualify him to sit in the mandamus proceedings.

The statute of 1862, sec. 28, p. 337, McC's. Digest, provides that no Judge of any court or Justice of the Peace shall sit or preside in any cause in which he is a party, or in which he is interested, or in which he would be excluded from being a juror by reason of *interest*, consanguinity or affinity to either of the parties ; nor shall he entertain any motion in the cause other than to have the same tried by a competent tribunal.   Sec. 28, McC's. Dig.   The act 1870, sec. 30 of the Digest, declares that no Justice, Judge or juror shall be disqualified from sitting in the trial of any suit in which any county or municipal corporation is a party by reason that such Justice, Judge or juror is a resident or tax-payer within such county or municipal corporation.

The statute of 1862 is cited by counsel for appellants, and it is argued by them that no signer of the petition would have been a competent juror, had an issue of fact in the mandamus been sent to a jury.   Issues of fact in mandamuses are tried in this State by the Judge or court, and not by a jury, (State *ex rel.* vs. Commissioners of Suwannee County, 21 Fla., 1,) but it is yet true that the same *interest* that would disqualify persons as jurors, were they triers of facts in mandamus proceedings, will disqualify a Judge.

The first section of our statute regulating the change of county sites is as follows:   The registered voters of any county in this State wishing to change the location of their county site shall present to the Board of County Commissioners of such county a petition signed by one-third of the registered voters praying for a change of the location of such county site.   The other sections make it the duty of the commissioners to order an election upon receiving such pe-

tition, and they provide for the canvass of the returns and make other provisions not necessary to be noticed here.

The location of county site is a public question in which all the registered voters and citizens of a county have a common interest. The fact that a person signs a petition " praying for a change of location " of the county site is evidence that he desires a change and that in his opinion the public convenience and welfare demand that an election shall be held, at which the judgment of the registered voters of the county as to whether there shall be a change, and to what place the change shall be made, shall be taken ; but it is not evidence of what particular place he may desire the change to be made to, nor that his wish for a change is characterized by any motive other than the promotion of the public good and common convenience. It is not evidence that he has any pecuniary interest in any place that may be voted for as the county site, nor is the issue in itself one of pecuniary interest, but it is a public question in which each elector may express his judgment and desire upon the question of calling an election, by signing or refusing to sign the petition, and, at the election, by voting for whatever place he may please, without thereby subjecting himself to the imputation of acting under the influence of improper motives or personal interest.

It is true that the same interest that would disqualify a juror will, under our statute, disqualify a judge, but the fact of having signed such a petition is not evidence of any interest within the meaning of the term as used in the statute. Whatever effect it may in its consequences lead to, as to such signers, would result also as to any other citizen similarly situated, though not a signer.

The interest meant by the statute is property interest. In Inhabitants of Northhampton vs. Smith, 11 Metcalf, 395, it is said that the interest must be a pecuniary or proprietary

interest, a relation by which as debtor or creditor or heir or legatee or otherwise, the judge will gain or lose something by the result of the proceedings, in contradistinction to an interest of feeling or sympathy or bias that would disqualify a juror. See also Sjoberg vs. Nordin, 26 Minn., 501. If the nature of the suit is such that no individual property interest of the judge or juror is involved in it there can be no disqualification as to either on the ground of interest. Such is clearly the nature of the mandamus proceeding. It was not brought to enforce any individual property rights of any one, but to compel the commissioners to perform a public duty. Any citizen of Volusia county could have instituted the mandamus proceedings although not a signer of the petition presented to the County Commissioners. High on Extra. Legal Remedies, Sec. 431.

In Rogers vs. Cypert, Judge, decided by the Supreme Court of Arkansas in 1881, and cited and explained in Foreman et. al., vs. Town of Marianna, 43 Ark., 331, there was an application for a mandamus to compel a Circuit Judge to entertain and act upon a petition for a writ of *certiorari* to bring up the record of proceedings had in the County Court under a local option liquor law. The Circuit Judge answered the mandamus by stating that he had not refused the *certiorari* in the exercise of his sound discretion, but had refused to take any cognizance of the application for it, for the reason that " his wife and children had signed the original petition to the county court for the prohibition, and that he supposed he was thereby disqualified from acting in the case under that clause of the Constitution which forbids a judge from presiding where either of the parties shall be connected with him by consanguinity or affinity within such degree as may be prescribed by law." The mandamus was granted, the view of the court being that although the wife and children of the judge were technically parties, as being

amongst the petitioners, yet inasmuch as the proceeding was not a personal one and their interest was only a common interest with other citizens in the establishment of a wholesome police regulation affecting the whole community, they were not parties within the sense or within the spirit of the Constitution.

In Foreman et al., vs. Town of Marianna, Supra, it was held that a judge of a county court was not disqualified to act upon an application to annex territory to a municipal corporation by reason of being a resident of the corporation and having voted for or against the annexation. Eakin, J., speaking for the court, says : The judicial ermine does not absolve the individual from the duty, nor deprive him of the right to participate with other citizens in public movements for the public good which do not in any particular manner affect his private interests more than those of other citizens. How far he may do so in anticipation of the probability or chance that he may be called to decide upon the legality of such proceedings, is with him a consideration of prudence or good taste, to be determined in his own breast. If he were thereby disqualified he would be required to renounce all civic privileges. He could not even try a contested election case where he had voted for one of the contestants.

In Webster vs. County of Washington, 26 Minn., 220, the conclusion reached is that an ownership of lands contiguous to the line of a proposed county highway, which may affect or enhance the value of such lands, is not such an interest as legally precludes the owner from acting, as a member of the Board of County Commissioners, upon a petition signed by himself and others for establishing the road. The road as proposed did not pass over this Commissioner's land ; his only interest was that of an adjacent proprietor of land indirectly benefited by the proximity of a new road, and the additional facilities it might give to

trade and travel. The benefit he might thus enjoy, say the court, would be participated in, though perhaps in irregular degrees, by the proprietors of all lands accessible to the road and to a greater or less extent by the whole public that might have occasion to use the road. His interest was held not to be such a direct and private one, as, in the absence of a disqualifying statute, would make his acts void and illegal.

The Supreme Court of Missouri decided in Bowman's Case, 67 Mo., 146, that a Judge was not disqualified to sit in the trial of a case instituted by persons composing a committee of a corporation by reason of the fact that he was an honorary member of the corporation.

In Commonwealth vs. O'Neal, 6 Gray, 343, it was held that members of an association to prosecute violations of the statutes prohibiting the manufacture and sale of intoxicating liquors, who have each by subscribing a certain sum to the funds of the association rendered themselves liable to pay, to the extent of their subscription, their proportion of expenses incurred in such prosecutions, are not incompetent to sit as jurors on the trial of such a prosecution commenced by the agent of the association and carried on at its expense, if it does not appear but that they have paid their subscription before this prosecution was commenced. For aught that is shown, says this opinion, each of them may have paid before this prosecution was commenced the full sum he had subscribed ; it therefore does not appear that either of the jurors had any, even the smallest, pecuniary interest in the event of the prosecution and the court cannot presume without evidence that they had. They might have been interrogated on oath whether they had expressed or formed any opinion in the case or were sensible of any bias or prejudice, and their answers might possibly have been such as to exclude them from the panel, but this was

not done. The ruling in State vs. Wilson, 8 Iowa, 407, and Fleming vs. State, 11 Ind., 234, are in the same line as showing that questions as to membership of such committees are admissible for the purpose of testing the juror's impartiality and freedom from bias, instead of his interest in the cause.

There is nothing in the record indicating that Judge Broome has advised or in any manner encouraged the institution of the mandamus proceeding.

It is of course not pretended that the Judge has any prejudice, nor has any action under the statute authorizing a challenge of a Judge on such ground been taken.

We do not think if an issue of fact in the mandamus proceeding could have been sent to a jury for trial that one of the signers of the petition would have been rendered incompetent as a juror on the ground of *interest* by the mere fact of being such signer. Whether in his connection with the petition a signer of it may have expressed or formed such an opinion as would disqualify him as a juror, or had through such connection become possessed of prejudice or bias, are questions to be decided when they are presented.

We conclude upon the principles of law governing in such cases that Judge Broome was not disqualified by reason of any interest to sit in the mandamus case; yet we feel that he would not have signed the petition had it occurred to him at the time of signing it that his competency to sit in any litigation involving the election thereunder might, on that account, be challenged.

III. The next question to be disposed of is whether or not the complainants are concluded from asking relief upon their bill by the mandamus judgment.

The alternative writ of mandamus, set up in the chancery bill, recites that it has been suggested that Isaac A. Stewart, J. B. Jordan, J. J. Banta, G. A. Dreka, F. S-

Goodrich, J. G. Owen and Samuel Lowrie are registered voters of Volusia county, and that they, with other registered voters of the county, to the number of 825 (more than one-third of the registered voters of the county, there being only 2,272 registered voters in the county), being desirous of changing the location of the county site of the county, signed and presented a petition to the Board of County Commissioners of the county, and that the petition was received by such board, composed of D. Freeman, G. D. Bryan, J. G. Poppell, and J. D. Ross, said petition praying for a change of the location of the county site, and for an election thereon, and that such petition was in due form of law, and was presented to the board when in session on the 7th day of February, A. D. 1888, by Isaac A. Stewart, one of said petitioners, on behalf of himself and the other petitioners, with the request that an election be then ordered; and that the board refused to grant the prayer of the petition, or to order an election on the question of the change of the location of the county site of the county as asked. The command of the writ is that the said County Commissioners forthwith assemble as such and order an election on the question of a change of location of the county site, or show cause why they should not, at the place and time stated in the writ.

Three of the Commissioners, D. Freeman, J. G. Poppell and J. D. Ross, answered, stating that said Isaac A. Stewart, J. B. Jordan, J. J. Banta, G. A. Dreka, F. S. Goodrich, J. G. Owen and Samuel Lowrie, being registered voters of said county, with others, registered voters of Volusia county, to the number of 825, did sign and present a petition to the Board of County Commissioners of Volusia county on February 7th, 1888, while said board was in session, and that the petition contained the names of more

than one-third of the registered voters of the county, there being 2,272 registered voters on the lists of registration, and that the petition was addressed to the Board of County Commissioners and prayed for a change of the location of the county site of the county.

That the only reason an election was not ordered on presentation of the petition, was that G. D. Bryan, one of the members of the board, said that he had information from an attorney that an election could not be ordered, and that another attorney advised them to the same effect. Both attorneys are designated.

That the said D. Freeman was chairman of the board, and said J. D. Ross made a motion to order an election, but the same was lost and the said matter was postponed on the advice of an attorney.

That the Commissioners all acted in good faith. That they have attempted to get a meeting of the board since the discovery of the error, caused by the advising attorney and Bryan, but have failed to have a full meeting on account of Bryan disregarding the call of the chairman, and his promises to meet with them.

Judge Broome held the answer to be insufficient, and granted a peremptory writ commanding the Commissioners to meet on a day to be specified by the chairman, for the purpose of ordering the election.

If there was any fatal deficiency in the petition filed before the County Commissioners, or any other good reason in law why the election should not have been called, it could have been interposed as a defence to the alternative writ of mandamus, and it was the duty of the Commissioners to do so. They are the representatives of the county in the matter of their duties under the statute, and if they failed to avail themselves of any legal defence to the writ, the complainants and other people of the county are pre-

cluded by the judgment thereon, there being not only no charge of fraudulent collusion between the Commissioners and the petitioners, or between the former and the relators, but none of fraud of any kind against either the Commissioners, the petitioners or the relators.

A judgment against a county or its legal representatives in a matter of general interest to all the people thereof as one respecting the levy and collection of a tax is binding, not only on the official representatives of the county named in the proceeding as defendants, but upon all the citizens thereof, though not made parties defendant by name. Clark vs. Wolf *et al.*, 29 Iowa, 197; Freeman on Judgments, sec. 178. In Gaskill vs. Dudley, 6 Metcalf, 546, D. recovered judgment by default against a school district in an action on a contract with the district to build a school house, and levied his execution on the goods of G., a member of the district, and it was held that G. could not give evidence that D. had not performed his contract, and therefore ought not to have recovered judgment against the district; and in Lane vs. Inhabitants of School District in Weymouth, 10 Metcalf, 432, the decision was that individual members of a school district had no right to appear and be heard in defence of an action against the district.

If the judgment in mandamus was not as effectual, upon the principle of *res adjudicata*, against the inhabitants of the county as it is against the County Commissioners, there would be no end to litigation in such cases or in any cases against county officials as such. Terry vs. Town of Waterbury, 35 Conn., 526, 534.

Every question suggested by the bill as to the validity of the petition, including those as to the names of some of the signers being on the registration lists, and those as to the legality of the registration of others, could, in so far as they were the subjects of judicial inquiry, have been raised by

the Commissioners in the mandamus proceeding. County Commissioners of Columbia County vs. Bryson, 13 Fla., 281.

The award of the peremptory writ adjudicated the legality of the petition in all respects and settled the question of the duty of the Commissioners to call the election.

When they met pursuant to such call the legality of the petition was in no wise open for their consideration, and nothing more than this need be said of the allegations of the bill as to what they did or did not do in the line of such consideration at their meetings subsequent to the award of peremptory writ.

This bill seeks to open again what had already been adjudicated. In Cromwell vs. County of Sac, 94 U. S., 351, speaking of the effect of a former judgment on the same claim, it is said that it, " if rendered on the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Aurora City vs. Wirt, 7 Wall., 82 ; People vs. Board of Supervisors, 27 Cal., 655 ; Durant vs. Essex, 7 Wall., 109. Neither the fact of the admissions in the return to the alternative writ, nor the absence of any issue of fact from the mandamus pleadings, constitute any exception to the rule, for it makes " no difference in principle whether the facts upon which the court proceeded were proved by deeds and witnesses or whether they were admitted by parties. And an admission by way of demurrer to a plea ling in which the facts are alleged must be just as available to the opposite party as though the admission had been made *ore tenus*

before a jury." Bouchard vs. Dias, 3 Denio, 238, 244. The mandamus seems to have in effect been submitted as upon demurrer to the answer, 27 Cal., 655, and this involved an inquiry into the sufficiency of the alternative writ or declaration, which writ averred the entire legality of the petition and its presentation to the Commissioners, and the Commissioners and their privies are forever precluded, by the judgment rendered, from contesting such legality *on any ground whether of law or fact* in any other proceeding. Block vs. Commissioners, 99 U. S., 686.

IV. The only other ground of appeal requiring consideration at our hands is that as to the dismissal of the bill.

The only relief prayed is an injunction and it is apparent on the face of the bill that there is no ground for such relief. It sets up the proceedings at law which preclude the complainants from the relief they seek. They can derive no benefit from having the defendant answer, and it would be both useless and a hardship to require the defendants to answer. 2 High on Injunctions, secs. 1580 and 1706. Had the bill been filed to restrain the proceeding in mandamus, pending such proceedings, it would have been dismissed for reasons indicated above, as was done in County Commissioners vs. Bryson, 13th Fla., 281. Had this bill not been dismissed by the Chancellor it would be our duty to direct a dismissal, as, considering the whole of it, there is no equity in it. Freeman vs. Timanus, 12th Fla., 393 ; 1 D. C. P. & P., 557, note 4.

The order appealed from is affirmed, and it will be decreed accordingly.