THE Atchison, Topeka and Santa Fe Railway Company sued the board of county commissioners of Fremont county and school district No. 2 of Fremont county to recover $576.43 paid in 1932 for the taxes of 1931, it being contended that the tax levy was illegal. The trial court sustained the defendants' demurrers on the ground of defect of parties defendant, i. e., the absence of the state of Colorado, and overruled their demurrers on the grounds of want of jurisdiction and insufficient facts. The plaintiff stood upon its complaint and the court dismissed the case. Both the plaintiff and the defendants complain of the adverse rulings of the court.
The complaint alleges substantially the following facts: On December 9, 1930, the district had outstanding *Page 437 
registered warrants amounting to $111,134.08, upon which there was about $7,300 accrued interest. The district, one Joseph D. Grigsby, and a bank that held most of the warrants agreed upon a plan "for the funding of the outstanding warrants and floating indebtedness of the district and for the borrowing of additional funds for the future uses of the district and for the payment of $7,000 to said Grigsby for his cooperation, and for the issuance of * * * so-called `bonds' of the district to be sold by said Grigsby; all without submission to or vote by the electors of the district." Pursuant to the plan agreed upon, the district issued to the bank $50,000 of warrants to be used to borrow money to pay all outstanding warrants, and to pay $7,000 to Grigsby for services in carrying out the plan; the balance to be used to pay current expenses of the district, especially for January and February, 1931. On December 17, 1930, suit was brought in the district court of Pueblo county, in the name of M. E. Hyde (a "dummy" selected by Grigsby) to recover $140,000 from the district. In the complaint in that suit it was alleged, falsely, that Hyde had purchased and was the owner of warrants totaling $135,889.29, including the $50,000 of warrants, which, it was alleged, represented existing lawful indebtedness for labor, material and services; that there was sufficient credit in the district fund for 1930-1931 for the payment of the $50,000 of warrants; and that the district had diverted its funds to other and different purposes than for the payment of the warrants upon which the suit was based. The $50,000 of warrants remained in possession of the county treasurer, and later were cancelled pursuant to the bank's request. On the same day that the suit was commenced the district filed an answer admitting the allegations of the complaint, and consenting to the entry of judgment against the district in accordance with the prayer of the complaint; whereupon the court made a finding, based upon the pleadings, that the district was indebted to the plaintiff in the sum of $141,857.09, and *Page 438 
rendered judgment against the district for that amount. It is alleged that the making of the false allegations in the complaint, and the confession thereof by the district, "was a fraud upon each and every of the taxpayers of the district." Two days after obtaining that judgment, Hyde, in furtherance of the plan agreed upon, commenced in the same court a mandamus proceeding against the district to compel a tax levy to pay the judgment. On the same day the district appeared and consented to the entry of judgment as prayed; whereupon the court rendered judgment pursuant to a stipulation of the parties. The judgment ordered the district to levy a property tax sufficient to produce in 1931 $7,000 principal and $6,300 interest, and, at the option of the school board, a further sum of $6,300 for interest falling due in 1931; and to levy annually in subsequent years, up to and including 1950, a property tax sufficient to produce the several amounts specified in the judgment; and that "The proceeds received from said taxes shall be usedsolely for the purpose of paying the principal of saidjudgment." (Italics are ours.) After reciting the quoted provision of the judgment, the verified complaint in the case at bar alleges: "That the levy has been madepursuant to said judgment order and the taxes hereby sought to be recovered are this plaintiff's portion or share of the taxes so levied." (Italics are ours.) The judgment further ordered the issuance to Hyde of "judgment bonds" to "represent" the money judgment, and that upon the delivery of the bonds to Hyde, she should enter satisfaction of the judgment. Bonds aggregating $140,000 were issued and delivered to Hyde, who thereupon caused a satisfaction of the judgment to be entered. Grigsby sold all of the bonds "to the State of Colorado, through its State Land Board," and the state now owns them. From the argument it appears that the bonds were purchased with money belonging to the state school fund and are held for the benefit of that fund. The proceeds were used to pay the outstanding warrants *Page 439 
(except the $50,000 of warrants, which remained in the hands of the county treasurer and were canceled by him) and $7,000 to Grigsby, leaving a surplus, which was placed to the credit of the district. The complaint also alleges facts upon which counsel base a contention that the judgment bonds raised the bonded indebtedness of the district above the constitutional limit.
The net result is that all of the money derived from the transaction, except the $7,000 paid to Grigsby as commission, went into the school fund of district No. 2, where it belonged.
The action is brought under the following provision of section 7447 of the Compiled Laws: "In all cases where any person shall pay any tax, interest or cost, or any portion thereof, that shall thereafter be found to be erroneous or illegal, whether the same be owing to erroneous assessment, to improper or irregular levying of the tax, or clerical or other errors or irregularities, the board of county commissioners shall refund the same without abatement or discount to the taxpayer."
The plaintiff attacks the tax levy in two ways.
1. It is said that the judgment bonds are void for the following reasons: That the court had no jurisdiction to order the issuance of the "judgment bonds"; that the bonds were issued without a vote of the qualified electors; and that they raised the district bonded indebtedness above the constitutional limit. As the judgment bonds are void — so goes the argument — the levy to pay either principal or interest is void. Much is said in an attempt to distinguish this case from Grater v. LoganCounty High School District, 64 Colo. 600, 173 Pac. 714, where we held that in a suit to restrain the levy and collection of taxes to pay interest on bonds of a high school district the holders are indispensable parties, and that if service of process upon them cannot be had the suit must be dismissed. The district court held that the Grater case controlled this, and that as the state, the owner of all the bonds, cannot be sued without its *Page 440 
consent and has not given its consent in the present instance, the court could do nothing other than dismiss the suit, which it did.
[1] This case does not require a decision of that question. As we have seen, it is alleged in the complaint that the judgment in the mandamus suit ordered a levy to pay, not the bonds, but the money judgment, and that the levy of the taxes, a part of which the plaintiff seeks to recover, was made "pursuant to said judgment order." If the plaintiff were right in its contention that the bonds issued to "represent" the judgment are void, it would not entitle the plaintiff to a return of taxes paid, for, if the bonds were void, the delivery thereof to the judgment creditor would not satisfy the money judgment, which would remain in full force and effect, and the peremptory mandamus to levy taxes to pay the same, and the levy made in obedience thereto, would remain unimpaired.
[2] 2. It is said that the money judgment and the mandamus judgment constitute a fraud upon the taxpayers.
A judgment rendered without jurisdiction is void and may be attacked either directly or collaterally. But where a judgment rendered by a court having jurisdiction over the subject matter and the parties and jurisdiction to render the particular judgment is obtained by fraud or collusion, it is voidable only, not void, and it is binding upon parties and their privies unless and until it is set aside in a direct proceeding brought for that purpose. It cannot be attacked by them in a collateral proceeding such as this is.
[3, 4] A school district or a county stands in the place of its taxpayers. There is a privity between them, the same as there is between a private corporation and its stockholders. In Croke v. Farmers High Line Canal Reservoir Co., 71 Colo. 514, 208 Pac. 466, we held that there is a privity between a corporation and its stockholders, and that a decree against the former is *Page 441 
conclusive upon the latter in respect to their rights as such. To the same effect, see Graham v. Boston, Hartford Erie R. R. Co., 118 U.S. 161, 6 Sup. Ct. 1009; Sanger v.Upton, 91 U.S. 56. If corporation officers, by collusion, should consent to a judgment against the corporation, based upon false and fraudulent claims, stockholders would not be helpless. Upon making such a showing a stockholder would be permitted to file a motion to set aside the judgment, or he could bring a suit in equity to set it aside; but unless and until set aside in a direct proceeding brought for that purpose, the judgment would be binding, not only upon the corporation, but also upon the stockholders. It could not be attacked in a collateral proceeding.
A similar rule applies in the case of the taxpayers of a school district, of a county, or of any other political division of the state. In 15 R. C. L., p. 1029, it is said: "A state, county, municipality or other governmental body is a representative of its citizens and taxpayers for certain purposes and not otherwise. With respect to the purposes for which it is not their representative, a judgment against it cannot affect them as res judicata, while, as to matters in which it is their representative, such a judgment is as conclusive on them as if they were parties to the record."
[5] If the officers of a school district or of a county, etc., acting in collusion with the plaintiff in a suit against such political division, were to permit judgment to be rendered on false and fraudulent claims, such judgment would be, not void, but merely voidable, and although a taxpayer could have it set aside in a direct proceeding, he could not attack it in a collateral proceeding. Unless and until set aside in a direct proceeding, the judgment would be binding upon the taxpayers.
[6] It has been held repeatedly that a judgment against a county or its legal representatives, in a matter of general interest to all the people, as, for example, one respecting the levy and collection of a tax, is binding, not *Page 442 
only on the county and its official representatives named as defendants, but also upon all taxpayers of the county though not named as defendants in the case. Bear v.Board of County Commissioners, 122 N.C. 434,29 S.E. 719; Clark v. Wolf, 29 Ia. 197; State ex rel. v. Rainey,74 Mo. 229; Sauls v. Freeman, 24 Fla. 209, 4 So. 525;Cannon v. Nelson, 83 Ia. 242, 246, 48 N.W. 1033. And see 15 R. C. L., page 1030, where it is said: "A judgment against a county or its legal representatives in a matter of general interest to the people thereof concludes not only the parties named as defendants, but also all the citizens of the county not so named."
In State ex rel. v. Rainey, supra, one Davis obtained, in the federal court, a default judgment against Greene county on overdue interest coupons. The federal court issued a mandamus directing the levy of a tax to pay the judgment. The levy was made. Rainey, a taxpayer, refused to pay the tax and was sued therefor. In his answer Rainey attacked the coupons, and the bonds from which they were detached, alleging that they had been issued without authority of law and were void, and also attacked as void the tax levied to pay the coupons. It was held that as the federal court had jurisdiction to render the judgment, the judgment was binding unless set aside in a proper proceeding, and that it could not be attacked collaterally. In answer to the contention that the taxpayers were not parties to the suit, and therefore that Rainey was not bound by the judgment, the court said: "It has been argued by counsel with much plausibility and ability, that plaintiff is not bound by the judgment rendered in the case of Davis against Greene county, or the judgment rendered in the mandamus proceeding to compel the county court to pay, because he was not a party eo nomine in either proceeding. We have not been able to find, nor have we been cited to any authority sustaining this position of counsel. On the contrary, all the authorities we have examined touching this point overthrow the position. In the case of Clark *Page 443 v. Wolf, 29 Iowa 197, the precise question was considered at length, and it was there held that a judgment against a county or its legal representatives, in a matter of general interest to all the people thereof, as one respecting the levy and collection of a tax, is binding not only on the official representatives of the county named in the proceeding as defendants, but upon all the citizens thereof though not made parties defendant by name. This we think is so both on principle and authority, for in suits of the character mentioned the legally constituted representatives of the county stand in the place of each citizen of the county who is liable to be called on as a taxpayer to contribute his proper proportion to liquidate the demand which a judgment may establish."
[7] Section 7447 of the Compiled Laws, quoted above, provides for a refund of those taxes only "that shall thereafter be found to be erroneous or illegal." The money judgment was a solemn adjudication that the warrants upon which it was based were valid, and that the district was lawfully indebted to the plaintiff in that case in the total amount of those warrants. The mandamus judgment was a solemn adjudication that the plaintiff in the money demand suit was lawfully entitled to a levy of taxes to pay the judgment rendered therein, and that a levy made as ordered by the court would be a lawful, valid levy. Unless and until set aside, those judgments constitute insurmountable obstacles to the recovery of taxes under section 7447, supra.
That this plaintiff realized that it is necessary to get the money judgment out of the way before it can obtain a refund of taxes under section 7447, supra, and that that judgment can be set aside only in a direct proceeding, is evidenced by the fact that this plaintiff, jointly with another taxpayer, appeared in the case and petitioned the court to set aside that judgment. They failed to obtain the desired relief; whereupon this plaintiff commenced the present suit, in which it makes a collateral attack upon the money judgment and the mandamus *Page 444 
judgment, contending that the matters therein adjudged to be lawful are illegal. Such an attack cannot succeed.
In this collateral proceeding we cannot pass upon the validity of the warrants upon which the money judgment against the district was based, or review either the money judgment or the judgment in the mandamus case. In each of those cases the court had jurisdiction of the subject matter and of the parties and jurisdiction to enter the particular judgment; hence it is binding upon the district and its taxpayers unless and until it is set aside in a direct proceeding brought for that purpose.
The judgment of the district court was that the action be dismissed. That disposition of the case was the only one possible under the law.
For the reasons stated in this opinion, the judgment of dismissal is affirmed.
MR. CHIEF JUSTICE ADAMS, MR. JUSTICE CAMPBELL and MR. JUSTICE BURKE dissent.