Justice Stevens,
dissenting.
Rooker and Feldman are strange bedfellows. Rooker, a unanimous, three-page opinion written by Justice Van Devanter in 1923, correctly applied the simple legal proposition that only this Court may exercise appellate jurisdiction over state-court judgments. See Rooker v. Fidelity Trust Co., 263 U. S. 413, 416. Feldman, a nonunanimous, 25-page opinion written by Justice Brennan in 1983, was incorrectly decided and generated a plethora of confusion and debate among scholars and judges.* See District of Columbia *468 Court of Appeals v. Feldman, 460 Ú. S. 462; id., at 488 (Stevens, J., dissenting). Last Term, in Justice Ginsburg’s lucid opinion in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U. S. 280 (2005), the Court finally interred the so-called “Rooker-Feldman doctrine.” And today, the Court quite properly disapproves of the District Court’s resuscitation of a doctrine that has produced nothing but mischief for 23 years.
My disagreement with the majority arises not from what it actually decides, but from what it fails to address. Even though the District Court mistakenly believed it had no jurisdiction to hear this matter, its judgment dismissing the cause with prejudice was correct and should be affirmed. See Lance v. Davidson, 379 F. Supp. 2d 1117, 1132 (Colo. 2005). The Elections Clause claim . advanced by citizen-appellants in this case is the same as that advanced by their official representatives and decided by the Colorado Supreme Court in People ex rel. Salazar v. Davidson, 79 P. 3d 1221, 1231-1232 (2003). See 379 F. Supp. 2d, at 1126. As appellee points out, appellants’ second question presented “is literally the same question presented by the General Assembly on certiorari review (and denied) in Salazar.” Motion to Affirm 12. And, as a matter of Colorado law, appellants are clearly in privity with both then-Colorado Attorney General Salazar, who brought the suit on behalf of the people of Colorado, and the Colorado General Assem *469 bly, which was also a party to the Salazar litigation. See McNichols v. City & County of Denver, 101 Colo. 316, 322, 74 P. 2d 99, 102 (1937) (en banc) (finding privity between taxpayers seeking to challenge the validity of a bond issue and a public official “charged with ministerial and executive duties in connection” with the issuance of the bonds who already brought such a suit); Atchison, T. & S. F. R. Co. v. Board of County Comm’rs of County of Fremont, 95 Colo. 435, 441, 37 P. 2d 761, 764 (1934) (en banc) (explaining that taxpayers are in privity with a political division of the State or its official representative if the case involves “a matter of general interest to all the people”). Thus, all of the requirements under Colorado law for issue preclusion have been met, and appellants’ Elections Clause claim should therefore be dismissed. See generally 28 U. S. C. § 1738; Michaelson v. Michaelson, 884 P. 2d 695, 700-701 (Colo. 1994) (en banc) (setting forth requirements for issue preclusion under Colorado law).
Appellants’ spurious Petition Clause claim was also properly dismissed by the District Court. See 379 F. Supp. 2d, at 1130-1132. Nothing in the Colorado Constitution prevents appellants from petitioning the Colorado General Assembly with their grievances, id., at 1131; nothing in the United States Constitution guarantees that such a petition will be effective, Smith v. Highway Employees, 441 U. S. 463, 465 (1979) (per curiam); see also Minnesota State Bd. for Community Colleges v. Knight, 465 U. S. 271,285 (1984). Moreover, as the District Court recognized, appellants’ interpretation of the Petition Clause would lead to absurd results. See 379 F. Supp. 2d, at 1131-1132. As such, appellants’ Petition Clause claim was correctly dismissed because it fails to state a claim upon which relief may be granted. See generally Fed. Rule Civ. Proc. 12(b)(6).
For the foregoing reasons I respectfully dissent.

 See, e. g., Comment, Collateral Estoppel and the Rooker-Feldman Doctrine: The Problematic Effect These Preclusion and Jurisdictional Principles Have on Bankruptcy Law, 21 Emory Bankr. Dev. J. 579 (2005); Comment, The Rooker-Feldman Doctrine: Toward a Workable Role, 149 U. Pa. L. Rev. 1555 (2001); Proctor, Wirth, & Spencer, Rooker-Feldman and the Jurisdictional Quandary, 2 Fla. Coastal L. J. 113 (2000); Rowley, Tenth Circuit Survey, The Rooker-Feldman Doctrine: A Mere Superfluous Nuance or a Vital Civil Procedure Doctrine? An Analysis of the Tenth Circuit’s Decision in Johnson v. Rodrigues, 78 Denver U. L. Rev. 321 (2000); Symposium, The Rooker-Feldman Doctrine, 74 Notre Dame L. Rev. 1081 (1999); Pfander, An Intermediate Solution to State Sovereign Immunity: Federal Appellate Court Review of State-Court Judgments After Semi *468 nole Tribe, 46 UCLA L. Rev. 161 (1998); Recent Case, Ninth Circuit Ignores Principles of Federalism and the Rooker-Feldman Doctrine: Bates v. Jones, 131 F. 3d 843 (9th Cir. 1997) (en banc), 21 Harv. J. L. & Pub. Pol’y 881 (1998); Schmucker, Possible Application of the Rooker-Feldman Doctrine to State Agency Decisions: The Seventh Circuit’s Opinion in Van Harken v. City of Chicago, 17 J. Nat. Assn. Admin. L. Judges 333 (1997); Casenote, Texaco, Inc. v. Pennzoil Co.: Beyond a Crude Analysis of the Rooker-Feldman Doctrine’s Preclusion of Federal Jurisdiction, 41 U. Miami L. Rev. 627 (1987); Comment, Texaco, Inc. v. Pennzoil Co.: Some Thoughts on the Limits of Federal Court Power Over State Court Proceedings, 54 Ford. L. Rev. 767 (1986).